341 So.2d 396 (1976)
Judge Allen M. BABINEAUX et al.
v.
JUDICIARY COMMISSION of Louisiana et al.
No. 58450.
Supreme Court of Louisiana.
December 13, 1976.
Rehearing Denied January 21, 1977.
*398 William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Donald B. Ensenat, Asst. Attys. Gen., Cleveland C. Burton, Member, Judiciary Commission of Louisiana, Shreveport, for defendants-relators.
Patricia Saik, John P. Nelson, Jr., Nelson, Nelson & Lombard, Ltd., New Orleans, for plaintiff-respondent.
SANDERS, Chief Justice.
Ten Louisiana judges filed suit in the district court for a declaratory judgment that Canon 5 C(2) of the Louisiana Code of Judicial Conduct (1975), prohibiting judges from serving on the board of directors of financial institutions, is unconstitutional. All but one of the judges presently hold positions on the board of directors of banks and other financial institutions. On application of the Judiciary Commission of Louisiana, alleging that the constitutionality of the canon was at issue, we granted writs to determine the constitutional question. La., 336 So.2d 218 (1976).
Canon 5 C(1) and (2) of the Louisiana Code of Judicial Conduct (1975) provides:
"(1) A judge should refrain from financial and business dealings that tend *399 to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.
"(2) Subject to the requirement of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity but should not serve as an officer, director, manager, or employee of any bank, lending institution, homestead or savings and loan association, insurance company, public utility, and other businesses affected with a public interest."
Specifically, the petitioners assert that Canon 5 C(2) violates the due process clauses of the Fourteenth Amendment to the United States Constitution and of Article 1, Section 2 of the Louisiana Constitution (1974). Petitioners argue that the canon unduly restricts their right to pursue an occupation.
Petitioners also assert that the canon violates the Equal Protection clause of the Fourteenth Amendment in that it does not apply to part-time judges or to membership on the boards of directors of all types of businesses.
Finally, petitioners assert that the canon abridges their freedom of association in violation of the First Amendment to the United States Constitution.
The canon has its roots in the legal history of our State. On October 13, 1960, the Louisiana Supreme Court adopted for the first time canons of judicial ethics "for the proper guidance and protection of the Justices and Judges of the courts of record of Louisiana." See 242 La. XLI. The adoption of the canons climaxed a concerted effort of leaders of the bench and bar to secure formal guidance for judicial conduct. Canon IV provided generally that a judge's official conduct should be free from impropriety and the appearance of impropriety. More specifically, Canon XVIII provided:
"A judge should avoid giving ground for any reasonable suspicion that he is utilizing the power of prestige of his office to persuade or coerce others to patronize or contribute, either to the success of private business ventures, or to charitable enterprises. He should, therefore, not enter into such private business, or pursue such a course of conduct, as would justify such suspicion, nor use the power of his office or the influence of his name to promote the business interests of others; he should not personally solicit for charities, nor should he enter into any business relation which, in the normal course of events reasonably to be expected, might bring his personal interest into conflict with the impartial performance of his official duties."
On June 17, 1971, the Supreme Court Committee on Judicial Ethics formally ruled that membership on the board of directors of a bank violated Canons IV and XVIII of the Canons of Judicial Ethics.
On March 15, 1973, the Chief Justice appointed a 22-member committee, composed of leaders of the bench and bar, to prepare a new code of judicial conduct in light of subsequent developments, including the publication of a new code of judicial conduct by the American Bar Association. After extensive deliberation, the committee recommended retention of the prohibition against service by judges on boards of financial institutions but recommended more specific language, that now contained in Canon 5 C(2). The committee also recommended a grandfather clause, that is, a clause allowing judges already on the boards of financial institutions to continue to serve but barring new memberships.
On March 5, 1975, almost two years after the committee began its work, this Court adopted the Code of Judicial Conduct substantially as recommended, including Canon 5 C, but rejected the grandfather clause. See La.Cases, 308 So.2d XXXIV.

Due Process
The petitioners first argue that Canon 5 C(2) unduly restricts their right to pursue *400 an occupation and thus violates their rights to liberty and property protected by the due process clauses of both the state and federal constitutions.
This argument addresses what is generally termed substantive due process. Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. The essence of substantive due process is protection from arbitrary and unreasonable action. Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954); 16 Am.Jur.2d, Constitutional Law, § 550, p. 946.
The State Constitution vests in the Supreme Court of Louisiana general supervisory jurisdiction over all other courts, with authority to establish procedural and administrative rules not in conflict with law. Art. 7, § 10, Const. (1921); Art. 5, § 5, Const. (1974). Thus, the petitioners concede that the Supreme Court has general authority to adopt rules regulating the conduct of judges.
A director occupies a fiduciary relation to the corporation and its stockholders. LSA-R.S. 12:91; Williams v. Fredericks, 187 La. 987, 175 So. 642 (1937); Roussel Pump & Electric Co. v. Sanderson, La.App., 216 So.2d 650 (1968); House of Campbell v. Campbell, La.App., 172 So.2d 727 (1965). The directors manage the corporate affairs and are under a duty to use their best efforts to promote the interests of the corporation. LSA-R.S. 12:81; 19 C.J.S. Corporations § 764, p. 112.
A judge in the exercise of his judicial duties occupies a unique position. The nature of his office imposes upon him restrictions with respect to the extent that he can engage in the varied activities of business life. 46 Am.Jur.2d, Judges, § 51, p. 128. Canon 5, as a whole, is designed to minimize the risk of conflict between a judge's extra-judicial activities and his judicial duties. Canon 5 C(2) promotes this objective. A similar canon is in effect in a number of other states and in the federal courts. See Code of Judicial Conduct for United States Judges, Canon 5, 28 U.S.C. § 455.
The risk of conflict is substantial. As a director, a judge may use or appear to use the power and prestige of his judicial office to attract business for the corporation. Although not intentionally exerted, his influence upon litigants and potential litigants defies measurement.
The petitioners' contention that a directorship is a neutral position is untenable. It overlooks the fact that a director owes a fiduciary duty to the corporation. In practical terms, this means a duty to efficiently manage its affairs and promote its business.
A second source of conflict is in litigation. Litigation by financial institutions is a common occurrence. The corporation may become a litigant in the court on which the judge-director serves or have a business relation with a litigant in that court. In either situation, problems arise pertaining to the recusal, or disqualification, of the judge. See LSA-C.C.P. Art. 151.
We conclude that the restriction on directorships is neither arbitrary nor unreasonable. Hence, it does no violence to substantive due process.
The petitioners also complain of the denial of procedural due process.
Procedural due process requires that all proceedings directed toward the deprivation of life, liberty, or property be conducted in a manner consistent with essential fairness. Among the requirements are notice of the proceeding and a fair opportunity to defend. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); 6 Am.Jur.2d, Constitutional Law, § 548, p. 941.
On May 28, 1976, the Judiciary Commission notified the petitioners that under Louisiana Supreme Court Rule 23, the Commission would determine the applicability of Canon 5 C(2) to them pursuant to an evidentiary hearing. The Judiciary Commission subsequently set the hearing for August *401 27, 1976. Because of the pendency of these proceedings, the hearing was delayed.
Petitioners make no attack upon the adequacy of the notice. They do complain of the inadequacy of the procedures, especially those for legal counsel, and assert that the Administrative Procedure Act (LSA-R.S. 49:951 et seq.) is applicable.
LSA-R.S. 49:951(2) expressly provides:
"Agency' means each state board, commission, or department which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof and the courts." (Italics ours.)
The term courts in the above provision means the judicial branch of state government. See Art. 5, La.Const.1974. The Judiciary Commission is an independent, disciplinary body in the judicial branch of government. See LSA-Const. Art. 5, § 25 (1974). Hence, contrary to petitioners' contention, the Administrative Procedure Act is inapplicable.
The Judiciary Commission procedures are set forth in Rule 23 of the Louisiana Supreme Court Rules. Section 9(a) provides:
"In proceedings involving his discipline, a judge shall have the right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. He shall also have the right to the issuance of subpoenas for attendance of witnesses to testify or for the production of books, papers, documents, and other evidentiary matter."
Insofar as representation by counsel is concerned, the above section contains no constitutional infirmity.

Equal Protection
The petitioners assert that Canon 5 C(2) violates the Equal Protection Clause of the Fourteenth Amendment in that it makes two sets of classifications which are unreasonable. First, the canon applies only to full-time judges and not to part-time judges. Second, the canon prohibits judges from serving as directors of banks, lending institutions, homestead associations, insurance companies, public utilities, and other businesses affected with a public interest but does not prohibit service on the boards of other types of corporations.
The guiding principle of equal protection is that all persons similarly situated shall be treated alike. Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); 16A C.J.S. Constitutional Law § 502 p. 296.
As the petitioners correctly note, the key to determining whether there has been a denial of equal protection is whether the classifications made are unreasonable and arbitrary.
By virtue of constitutional and statutory authority, a substantial number of part-time judges are presently serving in the courts of limited jurisdiction. See LSA-Const. Art. 5, § 15 (1974); LSA-13:1951 et seq. These judges are legally authorized to pursue another occupation, and their compensation is fixed accordingly. Because of the dual source of their livelihood, their situation differs in a marked degree from that of the full-time judge of the courts of general and appellate jurisdiction. Under the circumstances, the separate classification of the part-time judge is neither unreasonable nor arbitrary. Reynolds v. Chumbley, 175 Tenn. 492, 135 S.W.2d 939 (1940).
The business classification of the canon is based upon the Code of Judicial Conduct of the American Bar Association adopted in 1972. That code contains alternative provisions: One, prohibiting a judge from serving as a director of any business; the other, prohibiting a judge from serving as a director of specified businesses affected with a public interest.
*402 After consideration, the Supreme Court adopted the less restrictive of the two provisions. See E. W. Thode, Reporter's Notes to Code of Judicial Conduct (1973) pp. 80-83.
The question then becomes whether "bank, lending institution, homestead or savings and loan association, insurance company, public utility, and other businesses affected with a public interest" represents an unreasonable classification. We think not.
An analysis of the businesses enumerated discloses that they are of three types: (1) financial institutions, (2) public utilities, and (3) other businesses affected with a public interest.
Because of the nature of their operations, these three types of businesses are more likely to have regular litigation in the courts than other businesses. Mortgage foreclosures and suits on promissory notes by financial institutions are daily grist in the courts. Significantly, the courts ultimately review the rates of public utilities. Service on the boards of financial institutions, which compete for public patronage, is more likely to provide ground for a reasonable suspicion that a judge is utilizing the power and prestige of his office to influence others to patronize the business or contribute to its success.
We conclude that the business classification has a rational basis and is neither arbitrary nor unreasonable.

Freedom of Association
Petitioners' contention under the First Amendment is that the canon abridges their right to freely make economic associations.
The First Amendment, of course, is applicable to the states by virtue of the Fourteenth Amendment. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). However, freedom of association is not an absolute. Whenever the freedom of association is asserted against the exercise of state powers, it must be considered "in light of the special characteristics of the . . . environment" in the particular case. See Tinker v. Des Monies Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In such a case, a determination of the constitutionality of the regulatory measure requires a weighing of the competing interests. The State must demonstrate that the action taken is reasonably related to the protection of a legitimate interest and that the restriction on association is no greater than is required to further that interest. Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); 16 Am.Jur.2d, Constitutional Law, § 355, p. 682; Annot., Right of Association, 33 L.Ed.2d 865 (1973).
The countervailing state interest in the present case is the impartiality, independence, and public image of the judiciary. See Canon 1, Louisiana Code of Judicial Conduct; La. Cases, 308 So.2d XXXIV.
The state interest is correctly described in 46 Am.Jur.2d, Judges, § 51, p. 128 as follows:
"The peculiar nature of his office imposes upon a judge certain restrictions and limitations with respect to the extent to which he may engage in the ordinary activities and associations of citizens. He should, of course, refrain from activities and associations that would tend to impair his independence of judgment or render him subject to improper influence in the performance of his duties."
In 1948, Judge John J. Parker, United States Court of Appeals, Fourth Circuit, emphasized the importance of the regulatory interest here when he wrote:
"The judge must not only be independentabsolutely free of all influence and control so that he can put into his judgments the honest, unfettered and unbiased judgment of his mind but he must be so freed of business, political and financial connections and obligations that the public will recognize that he is independent. It is of supreme importance, not only that justice be done, but that litigants before the court and the public generally understand that it is being *403 done. . . ." 20 Tenn.L.Rev. 703, 705-706 (1947-1949).
The state interest here is a compelling one. The restriction falls only upon those who freely accept the privilege of judicial office. As we have already observed, it is reasonably designed to further that interest.
In our opinion, the Canon does not unconstitutionally infringe upon the freedom of association.

Other Issues
One member of the Judiciary Commission asserts that the courts lack jurisdiction to decide the merits of any of petitioners' constitutional claims at this time. Although his contention is substantial, we ultimately conclude that it is without merit. In our opinion, the courts do have jurisdiction in a declaratory judgment action to determine the constitutionality of the basic canon at this time. LSA-Const. (1974) Art. 1, § 22; LSA-C.C.P. Art. 1871.
The petitioners advance other contentions dealing with various aspects of the disciplinary investigation begun by the Judiciary Commission. Particularly, all parties request the Court to rule upon the question of whether or not service as a director of a financial institution in violation of Canon 5 C(2) is per se proscribed conduct under Article 5, § 25(C) of the Louisiana Constitution (1974). These contentions are not properly before the Court. As a constitutionally created disciplinary body, the Judiciary Commission is vested with the initial responsibility of investigating judicial misconduct and, when justified, making appropriate recommendations to this Court for disciplinary action. This Court, of course, must pass upon these recommendations. See LSA-La.Const. (1974) Art. 5, § 25.
For the reasons assigned, Canon 5 C(2) of the Louisiana Code of Judicial Conduct is declared constitutional, the demands of the petitioners are otherwise rejected at petitioners' costs, and the stay order previously issued is recalled.