346 So.2d 676 (1977)
In re Judge Allen M. BABINEAUX, Fifteenth Judicial District Court, et al.
No. 59562.
Supreme Court of Louisiana.
May 16, 1977.
Rehearing Denied June 17, 1977.
*677 John P. Nelson, Jr., Patricia E. Saik, Nelson, Nelson & Lombard, Ltd., New Orleans, for plaintiffs-respondents.
William J. Guste, Jr., Atty. Gen., Donald B. Ensenat, Asst. Atty. Gen., Eugene J. Murret, New Orleans, for Judiciary Commission of Louisiana.
CALOGERO, Justice.
The Judiciary Commission of Louisiana, a constitutional body charged with initiating disciplinary action against judges for, among other things, willful misconduct relating to official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, determined after preliminary investigation made on their own motion that respondent judges[1] had persisted in serving on the Boards of Directors of certain financial institutions or businesses affected with a public interest in violation of Canon 5(C)(2) of the Code of Judicial Conduct, and notified the respondent judges that a hearing would be instituted to determine whether there was cause for disciplinary action as provided by Article V, section 25(C) of the Louisiana Constitution of 1974.
The judges filed an answer to the complaint in which they attacked Canon 5(C)(2) on constitutional grounds. Independently, they filed a suit for declaratory judgment in the Civil District Court for the Parish of Orleans to have the canon declared unconstitutional. In that proceeding, on application of the Judiciary Commission of Louisiana, we granted writs to determine the constitutional question, 336 So.2d 218 (La. 1976), and in a decision of December 13, 1976, we declared Canon 5(C)(2) of the Code of Judicial Conduct constitutional. Babineaux v. Judiciary Commission, 341 So.2d 396 (La.1976) [hereinafter Babineaux].
In Babineaux we found nonmeritorious the judges' contention that their constitutional right of due process and equal protection as well as freedom of association were offended by the canon. In that decision we pretermitted the question of whether or not service as a director of a financial institution in violation of Canon 5(C)(2) is per se proscribed conduct under Article V, section 25(C) of the Louisiana Constitution of 1974.
*678 We concluded that this particular question was not then properly before the Court, because the Judiciary Commission, which is vested with the initial responsibility of investigating judicial misconduct and, when justified, making appropriate recommendations to this Court for disciplinary action, had at that time made no finding and/or recommendation.
Subsequent to that decision, the Judiciary Commission held its hearing in the disciplinary matter, that hearing having previously been stayed by us pending resolution of the declaratory judgment action. Each of the seven respondent judges testified at the hearing. Following the hearing, the Judiciary Commission took the matter under advisement and on February 5, 1977 the Commission found that each of respondent judges "has been and remains in open violation of Canon 5(C)(2) of the Code of Judicial Conduct and that said violation per se constitutes persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The Commission's findings of fact and conclusions of law also stated that "each of respondents has been and is well aware of the existence of [the] Canon," that "the Louisiana Supreme Court recently upheld the constitutionality of the Canon and its applicability to respondent judges," that "[e]ach respondent has been given ample notice and ample opportunity to comply with the Canon" and has nonetheless "continued to violate the Canon." Additionally, it found each respondent judge guilty of willful misconduct. The Commission thereupon recommended that each of the respondent judges be suspended without salary until such time as he complies with Canon 5(C)(2) by resigning his directorship or directorships on the financial institution on which he is currently serving. Under Article V, section 25 of the Louisiana Constitution, this Court must pass upon these recommendations and it is for this reason that the matter is presently before this Court.
The authority of the Supreme Court to discipline judges and the Judiciary Commission's power to recommend such measures is contained in Article V, section 25(C) of the Louisiana Constitution of 1974 which provides:
"On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings." (emphasis added)
The provision has been implemented by Supreme Court Rule XXIII which grants to the Judiciary Commission the power to make investigations, hold hearings, and advise this Court whether it believes that a judge is guilty, among other things, of willful misconduct relating to his official duty, or persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Code of Judicial Conduct was adopted by the Court pursuant to its constitutional supervisory jurisdiction over all other courts, see La.Const. art. V, § 5(A)(1974), and after lengthy deliberation on the need for greater specificity in some areas of ethical standards. For detailed historical development of the canon, see Babineaux, supra, at 399. This Code, like the Canons of Judicial Ethics which it replaced, is binding upon members of the judiciary. In re Haggerty, 257 *679 La. 1, 241 So.2d 469 (1970). Canon 5(C)(2) of the Code provides in pertinent part that:
"a judge may hold and manage investments, including real estate, and engage in other remunerative activity but should not serve as an officer, director, manager, or employee of any bank, lending institution, homestead or savings and loan association, insurance company, public utility, and other businesses affected with a public interest."
The issue now before us is the merit of the recommendation of the Judiciary Commission that the seven respondent judges, who retain positions proscribed by Canon 5, be suspended without salary until they comply with the canon by resigning their directorships.
The respondent judges in these proceedings again contend that the canon violates the equal protection guarantees of the federal and state constitutions, that it violates substantive and procedural due process rights of the judges because it is an arbitrary and unreasonable exercise of state power, and that it violates the first amendment because it literally establishes guilt by association alone. They acknowledge that this Court has already passed on these constitutional challenges but submit that the assumptions that provided the basis for finding this canon to be a reasonable exercise of power are not substantiated by the facts presented at the Judiciary Commission hearing. They contend further that, even if the canon passes muster on the constitutional challenges, disobedience of it does not constitute "willful misconduct relating to his official duty" or "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute" either as a per se rule or as applied on a case by case basis to each of them. They further contend that the fact that they have taken full exercise of their legal rights to challenge the canon, standing alone, cannot be considered a breach of either of the constitutional prohibitions because such a holding would exert a chilling effect on the free and full exercise of the right to challenge the rules.
The matters before us for present consideration therefore are limited. They are 1) whether we should reconsider, as requested by respondents, the constitutional issues already ruled upon adversely to the judges in the earlier decision, in light of the record which has been made up before the Judiciary Commission; 2) whether, assuming that Canon 5(C)(2) is again held constitutional, their conduct in desisting from resigning their respective positions continues grounds under Article V, section 25(C) of the Constitution for disciplinary action; and 3) assuming we reach the issue, whether and to what extent respondents should be disciplined.
Armed with the final judgment of this Court holding the canon constitutional, the Judiciary Commission at the hearing presented no evidence other than proof that the respondent judges were persisting in violating the canon by remaining as directors on their respective boards. The judges, on the other hand, presented unopposed testimony supportive of their contention that there was no substantial conflict or risk of conflict between their duties as judges and as directors, that litigation in their respective courts by institutions on whose board they sat was rare or nonexistent, that they did not solicit business for the respective institutions, that they preferred not to be denied their freedom of association, and that resigning would constitute a financial hardship for them.
Respondents' first contention is that the rationale on which the Court found the canon constitutional was shown by them to be unfounded in their particular situations, and the canon is therefore unconstitutional as it is applied to them. We have found the restriction neither unreasonable nor arbitrary on its face because it serves to reduce the possibility that a judge would, or would seem to, use the prestige of his judicial office to attract business for the financial institution, to eliminate the potential conflict between a director's fiduciary duty to the corporation and his judicial duties, and to lessen the possibility of conflict of interest for the judge revolving around litigation *680 before the court. The judges argue that they have overcome the presumption that the statute is unconstitutional as to them, because they have shown that none of the financial institutions involved gives its directors the responsibility of soliciting new accounts, that none have brought in any new accounts (other than family members), and that very seldom have any of these judges had to recuse themselves because of litigation in their court by their financial institutions. We find that this showing does not overcome the presumption that the restriction is constitutional as it is applied to them.
Furthermore, our judgment in the declaratory judgment suit holding the canon constitutional is final. We will not in this litigation reconsider the issues decided there. Even were we inclined to do so, nothing presented by respondents convinces us that we erred in that original determination. This matter has already been resolved.
Respondents' second contention, that violation of Canon 5(C)(2), standing alone, does not fall within the conduct proscribed by Article V, section 25(C) warranting disciplinary sanctions upon recommendation of the Judiciary Commission, has not yet been answered by this Court because that question was pretermitted in the earlier opinion. The issue raised here is whether the retention of board membership on a named financial institution, in direct conflict with the canon of the Code of Judicial Conduct, constitutes either "willful misconduct relating to his official duty" or "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute" so as to be a ground for discipline under the constitutional power of this Court. See La.Const. art. V, § 25(C) quoted above. The Commission found that the respondents' retention of these proscribed positions, after this Court's recent judgment upholding the canon's constitutionality and despite ample opportunity to comply, constituted both willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
We essentially agree with the Commission's conclusion for the following reasons. This Court has the constitutional authority, power and duty under Article V, section 5(A) to supervise all the courts of this state, with the right to establish procedural and administrative rules not in conflict with law, and the right to adopt standards of ethical conduct for judges. We have exercised that authority by adopting the Code of Judicial Conduct effective January 1, 1976. Included in that Code of Judicial Conduct is the canon here at issue which prohibits judges serving as directors of banks, homesteads and other business affected with a public interest. We have determined that this canon, Canon 5(C)(2), is constitutional. The Code of Judicial Conduct is binding on members of the judiciary. In re Haggerty, supra. Respondent judges have violated the canon, albeit for reasons which in their judgment required them to do so.
We find it unnecessary to decide whether what they have done by continuing to serve and refusing to resign is willful misconduct relating to their official duties, because we are satisfied that their conduct falls within the other constitutional proscription relied upon by the Judiciary Commission, namely, that it is persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The conduct is undeniably persistent and, contrary to respondents' positions, it is also public. Even without the publicity attendant to this litigation, respondents' service on boards of directors of financial institutions (banks, homesteads, etc.) was and is open and cognizable to those members of the public, and the bar, with sufficient interest or inclination to want to know. In our view it is also prejudicial to the administration of justice bringing the judicial office, and the judiciary in general, into disrepute, to have judges who are constitutionally subject to the supervision of this Court deliberately, continuously and openly refusing *681 to comply with a valid canon of ethics.
Rules, including rules of judicial conduct, are made to be followed, not disregarded. There would have been little purpose in the adoption of the Code of Judicial Conduct if they were to be merely hortatory. As was stated by the Supreme Court of Oregon in In re Hannon, 214 Or. 51, 59, 324 P.2d 753, 756 (1958):
"The rules promulgated by this court concerning professional and judicial ethics are not merely pious exhortations. They were established to be obeyed and they create rights corresponding to the duties imposed."
Judges are not merely elected public officials. Their role in the administration of justice makes them a special breed. The administration of justice requires adherence by the judiciary to the highest ideals of personal and official conduct. If judges openly flaunt the legal and constitutionally sanctioned and adopted Canons of the Code of Judicial Conduct, there is no question but that such persistent and public conduct is prejudicial to the administration of justice and that it does bring the judicial office into disrepute.
Having found that respondent judges' conduct constitutes grounds under Article V, section 25(C) of the 1974 Louisiana Constitution for disciplinary action, we need turn to the question of the extent to which respondents should be disciplined.
We are not unmindful of the fact that these respondent judges have violated the canon primarily in order to have their rights fully and finally tested in court. And we are aware of nothing in the backgrounds of these fine judges or in the manner in which they have conducted their respective offices except such as is exemplary. They are good judges who are being required to suffer personal economic deprivation brought on by evolving concepts of ethical propriety. As we have already pointed out, serving as members of boards of directors of these institutions had been permitted until relatively recently.
It is therefore with a degree of reluctance but with a commitment to duty that we are constrained to take disciplinary action against the respondent judges. We do so purely and simply to enforce Canon 5(C)(2), a function which is our constitutional duty.
Article V, section 25(C) of the 1974 Louisiana Constitution, appropriate to this case, permits censure or suspension with or without salary. Censure we deem inappropriate at this time, because the judges were in apparent good faith belief that their refusal to abide by Canon 5(C)(2) did not amount to constitutional cause for disciplinary proceedings against them. We are unwilling to censure them for having chosen to defend their view of the constitution by the present proceedings. Nevertheless, (pretermitting whether censure or other disciplinary sanction, in addition to suspension from office without salary might be appropriate if respondents persist hereafter in violating the canon) in order to enforce our ruling, the discipline we now choose to impose is suspension from office without salary, subject to a grace period of thirty days from the date of finality of this judgment. During such grace period they will have the opportunity to resign their positions as members of the board of directors of their respective financial institutions. If, at the expiration of that thirty day period, any of the respondents still have not complied with the canon, by resigning their board positions, they shall be suspended until such time as they do so.
For these reasons, the recommendation of the Judiciary Commission that the seven respondent judges be suspended without pay until they comply with Canon 5(C)(2) of the Code of Judicial Conduct is adopted. Such action, however, shall be suspended for thirty days from the date of finality of this judgment and then shall be imposed only on those judges who have not come into compliance by that date. Respondents are reserved the right to apply for a rehearing.
SUMMERS, J., concurs in part and dissents in part.
*682 SUMMERS, Justice (concurring in part and dissenting in part).
While I agree with the reasons assigned for finding that the respondent judges have violated Canon 5(C)(2) of the Code of Judicial Conduct, I am of the opinion that they should not be suspended without pay until they comply. In my view censure is more appropriate.
NOTES
[1] The respondent judges in this proceeding are the following: Judge Allen M. Babineaux of the Fifteenth Judicial District Court; Judge B. I. Berry of the Fifth Judicial District Court; Judge Lucien C. Bertrand, Jr. of the Fifteenth Judicial District Court; Judge Louis G. DeSonier, Jr. of the Twenty-fourth Judicial District Court; Judge Edward N. Engolio of the Eighteenth Judicial District Court; Judge John C. Morris, Jr. of the Fifth Judicial District Court; and Judge Walter C. Peters of the Thirty-first Judicial District Court.