LOBRANO, Judge.
This is an appeal by the Police Association of New Orleans (PANO), the New Orleans Fire Fighters Association and the class of City employees they represent, from a district court judgment whieh upheld the constitutionality of Ordinance 15298, as amended by Ordinance 15420 of the City of New Orleans.[1] The ordinances are often referred to as the “Domicile Ordinances”.

FACTS AND PROCEDURAL HISTORY:

On August 27,1973, the New Orleans City Council passed Municipal Ordinance 5240. That ordinance preferred residents of Orleans Parish in initial employment opportunities with the City and required all City employees to “reside ” in Orleans Parish. City employees who were already residing in other parishes could only move to another location within their parish of residence or into Orleans Parish. Some exceptions were permitted on an individual basis. Because the City was unable to meet its staffing needs exclusively from residents within Orleans Parish, many city employees hired after the adoption of Ordinance 5240 received exemptions.
On June -3, 1983, this Court in Werner v. Department of Police, 435 So.2d 475 (La.App. 4th Cir.1983), writ den. 441 So.2d 751 (La. 1983), affirmed a decision of the New Orleans Civil Service Commission reinstating Kathleen Werner, á member of the New Orleans Police Department, after she was .dismissed for violating the residency requirements of Municipal Ordinance 5240. When Werner joined the police department she gave her residence as her parents’ address in Orleans Parish. In 1981; Werner purchased a residence in Jefferson Parish. At trial, Werner testified that she resided in both Orleans and Jefferson Parishes. This Court distinguished the terms residence and domicile, held that they were not synonymous and declared that pursuant to the language of Ordinance 5240, a city employee could maintain two residences even though they may have only one domicile. Since the department was unable to prove that Werner did not reside in Orleans Parish, she was not in violation of the ordinance.
On December 6, 1990, the City council adopted Municipal Ordinance 14268 which added a new provision to Chapter 2 of the New Orleans City Code. This ordinance required all officers and employees of the City to be domiciled within the Parish of Orleans by January 1, 1994 or suffer criminal sanctions. Ordinance 14268 became effective December 10, 1990.
On February 27, 1991, in response to the passage of Ordinance 14268, PANO filed a class action suit on behalf of its members and all other officers and employees of the City of New Orleans. In the suit, PANO asked that Ordinance 14268 (popularly referred to *382 as the “domicile ordinance”) be declared unlawful and unconstitutional on its face and as applied in violation of certain provisions of the Louisiana Constitution of 1974.
On February 28, 1991, the trial court granted a temporary restraining order enjoining the enforcement of Ordinance 14268.
On March 7, 1991, the trial court certified the instant lawsuit as a class action suit and consolidated it with the lawsuit brought by the Fire Fighters Association, Local 632 on behalf of the fireman of the City of New Orleans.[2]
On March 8, 1991, the trial court issued a preliminary injunction prohibiting the enforcement and implementation of Ordinance 14268 on the grounds that the Ordinance violated Article 10, Section 10(A)(1) of the Louisiana Constitution of 1974 by impinging upon the express powers of the City Civil Service Commission.
The City appealed the trial court’s judgment to the Louisiana Supreme Court. On December 2, 1991, the Supreme Court reversed, holding that the power to adopt rules imposing domicile or residence requirements on municipal employees as a condition of employment was not exclusively vested in the City Civil Service commission and therefore did not violate Article 10, Section 10(A)(1) of the Louisiana Constitution. New Orleans Fire-Fighters Association Local 632, AFL-CIO v. The City of New Orleans, 590 So.2d 1172 (La.1991).[3]
On June 18, 1992, the New Orleans City Council enacted Municipal Ordinance 15298 which amended Ordinance 14268 and which redefined “domicile”. Section 2-705 of Ordinance 15298, entitled “GRANDFATHER CLAUSE”, exempted all officers or employees who on December 10, 1990 maintained their actual domicile outside of Orleans Parish, but denied them promotional opportunities unless they moved their domicile to Orleans Parish.[4]
On July 16, 1992, the New Orleans City Council enacted Municipal Ordinance 15420 which amended Section 2-705 of Ordinance 15298 exempting all officers and employees who on or before August 27,1973 maintained a domicile outside of Orleans Parish or who obtained written permission to do so from the Chief Administrative Officer after August 27, 1973, from the prohibition against promotional opportunities.[5] Thus, the only class *383 of employees exempted from the domicile requirement, but yet denied promotional opportunities, were those hired on or prior to December 10, 1990, but subsequent to August 27, 1973, and who did not have written permission to maintain their domicile outside the city. The amendment did not exempt those city employees who legally maintained dual residences pursuant to this Court’s decision in Werner. If their out of parish residence became their domicile as defined by the ordinance, they were denied promotional opportunities.
On July 16, 1992, in response to the amendment of Section 2-706 of Municipal Ordinance 15298, PANO filed a Supplemental and Amended Petition for Declaratory Judgment and Request for a Temporary Restraining Order against the implementation and enforcement of Ordinance 15298. The temporary restraining order was immediately granted by the Court.
On November 3, 1992, the trial court granted a preliminary injunction against implementation and enforcement of the ordinance.
On April 23, 1993, following a hearing on PANO’s request for a permanent injunction, the trial court upheld the constitutionality of Municipal Ordinance 15298 and dismissed PANO’s suit.
It is from this judgment that PANO now appeals. Although PANO lists eleven assignments of error, the thrust of their argument is that the domicile requirement of Municipal Ordinance 15,298 violates various Louisiana constitutional, statutory and codal provisions. For the following reasons we hold it is unconstitutional on its face and as applied to the plaintiffs.
Article 10, Section 7 and 10: I.
PANO asserts that pursuant to Article 10, Sections 7 and 10 of the Louisiana Constitution, the City Civil Service Commission has the express and exclusive power to adopt rules for the regulation of promotion of city employees and that Ordinance 15298 unconstitutionally infringes on that exclusive power. We agree.
Article 10, Section 10(A)(1) provides:
“Section 10. (A) Rules. (1) Powers. Each commission is vested with broad and general rule making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.” (emphasis added)
Article 10, Section 7 provides:
“Section 7. Permanent appointments and promotions in the classified state and city service shall be made only after certification by the appropriate department of civil service under a general system based upon merit, efficiency, fitness, and length of service, as ascertained by examination which, so far as practical, shall be competitive. The number to be certified shall not be less than three; however, if more than one vacancy is to be filled, the name of one *384 additional eligible for each vacancy may be certified. Each commission shall adopt rules for the method of certifying persons eligible for appointment, promotion, reemployment, and reinstatement and shall provide for appointments defined as emergency and temporary appointments if certification is not required, (emphasis added)
As is evident from the above constitutional provisions, the Civil Service Commission possesses the express and exclusive power to adopt rules governing the promotions of city employees and the system by which those promotions are awarded. The entire process is expressly based on “merit, efficiency, fitness, and length of service.”
Exercising its constitutionally mandated authority, the Civil Service Commission enacted Rule V, Section 5.1 which provides:
“Section 5.1. On every competitive promotion list and employment list, the eligible shall be ranked in the order of their ratings earned in the examination given for the purpose of establishing a list. The Director may determine that ratings earned in the examination shall be divided into bands. Bands shall be established based on psychometric properties of the test score distribution. All scores falling within a given band shall be considered tied.”
The jurisprudence recognizes that Civil Service Commissions are “autonomous bodies” with “constitutionally delineated powers and duties” which are “exclusive” and “above change or modification by the legislature.” Civil Service Commission v. Guste, 428 So.2d 457 (La.1983).
With respect to this argument the City asserts that the Supreme Court’s decision in New Orleans Fire Fighters v. City of New Orleans, 590 So.2d 1172 (La.1991), controls and makes it clear that the ordinance is constitutional. We disagree. It is our opinion that New Orleans Fire Fighters does not control the issue of promotional opportunities. That ruling addressed the issue of whether the City had the authority to impose a domicile requirement on city employees as a condition of their initial employment. The high court held that the power to establish residency or domicile requirements for city employees does not fall within the exclusive powers expressly or impliedly granted by the Constitution to the City Civil Service Commission. The court noted that the commissions’ express powers to adopt rules regulating selection, hiring, and promotion or demotion of employees do not include the power to adopt a residency requirement because residency is not related to the competitive selection and promotion of public employees based on merit, fitness and qualifications. However, that statement must be read in light of the issue before the court at that time. That is, the issue was domicile (or residency) as a prerequisite to employment. In the instant case, we are confronted with a different situation wherein a particular group of employees are denied promotional opportunities regardless of merit.
The domicile requirement of Ordinance 15298 attempts to modify the civil service system of competitive selection and promotion, a power specifically enumerated in Article 10 Section 10(A)(1) and Article 10 Section (7), by interjecting the additional requirement of domicile. The City asserts that domicile is not interjected in the Commission’s obligation to provide promotional lists based on merit, fitness and qualifications because Civil Service does not consider domicile in promulgating the lists. The City argues that only the appointing authority, when choosing those to be promoted, would be bound by the Ordinance to consider domicile. And since an employee does not have a right to promotion, the City concludes that there is no infringement on Article 10, Section 10 of the Constitution.
We disagree. The City’s attempt to make a distinction between the Civil Service’s exclusive powers and the appointing authority’s powers, is a distinction that makes no difference. The fact remains, promotion is denied based on domicile. That completely undermines Civil Service and its function.
The intrusive impact of Ordinance 15298 upon the promotional system within the classified service is evidenced by the testimony of Civil Service Director, Michael J. Doyle:
*385 “Q. Now, you require individuals to be residents with respect to the initial application?
A. Correct.
Q. Not domiciliaries?
A. That’s what the rule says, residence.
Q. But not domiciliaries?
A. Right.
* ⅜ * * * *
Q. Now, in your rules, is there any reference whatsoever to domicile or residence being a factor with respect to promotions?
A. Not in the same joint context, no, there is not.
Q. For instance, I believe it’s rule 5.1 or Roman Numeral V, Section 5.1, establishment of promotion list and employment list.
A. Right.
Q. Is this the only rule with respect to promotions?
A. With respect to promotions, yes.
Q. The competitive nature of promotions.
A. Right.”
When asked if there was any psychometric support for the insertion of a domicile requirement in connection with the competitive examination for promotion, Doyle responded:
“I think the consensus of most of our staff is that at some point during the course of the life of the register when it is developed, the City or the department is going to find itself in the position where we will have individuals at the top who will be quote, these non-domiciled individuals, there will be at least three in the department who will find them-selves [sic] in the position of not being able to promote anyone, in which case we will have a totally frozen register. I think everybody agrees that’s an excellent probability that is going to take place.
Q. What is the cost of developing a promotional register?
A. Depending upon the applicant pool, depending upon the nature and complexity of the exam, it could be anywhere from fifty to $150,000.00.
Q. Well, let me follow up on it. Is it fair to say the answer you gave was an explanation, but the answer to the question, the original question being is there any psychometric value to ascribing domicile or residency status to a promotional applicant, is the answer, no, there is no psychometric value?
⅜ ⅜ ⅜ $ ⅜ ⅜
THE WITNESS:
I think the only conclusion that we were able to consistently draw and that would be if the job that the individual was performing had some element of response time to it that there would be some correlation to be able to say that living within like a short period of time to the jobsite, they would be able to correlate that, but outside of that, there is no correlation.”
Municipal Ordinance 15298 attempts to permanently bar promotional opportunities to certain incumbent classified civil service employees domiciled outside of Orleans Parish. By so doing, it destroys the competitive promotional system based on merit and infringes upon the Commission’s express and exclusive powers to adopt rules regulating promotion and establishing a general system of promotion pursuant to Article 10, Section 7. As such, we hold that it is unconstitutional on its face and as applied.
II. Article 6, Section 5(E) and Article 6, Section 9:
Article 6, Section 5(E) provides for the structure and organization, as well as the powers and functions, of local governmental subdivisions under a home rule charter:
“(E) Structure and Organization; Powers; Functions.
A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local government subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution. ” (emphasis added)
*386 Article 6, Section 9(B) provides for the police power of the state:
“(B) Police Power Not Abridged. Notwithstanding any provision of this Article, the police power of the state shall never be abridged.”
PANO asserts that Ordinance 15298 violates Article 6, Section 5(E) and Article 6, Section 9 because it attempts to legislate that which is denied by both the constitution and general state law. Because the ordinance infringes on the express powers granted by the Constitution to the Civil Service Commission, we agree with this argument also.
As we have already noted, Article 10, Section 10(A)(1) and Article 10, Section 7 grant express and exclusive power to the City Civil Service Commission to promulgate rules and regulate the promotion of classified city employees. Because Ordinance 15298 attempts to abrogate that constitutional mandate, it also violates the prohibitions of Article 6, Section 5(E) and Article 6, Section 9.
In addition, we conclude that, in its attempt to define “domicile”, the ordinance conflicts with general law and thus violates Article 6, Section 5(E) in that respect.
In defining “domicile”, Section 2-702(B) and (C) of Ordinance 15298 provides:
“B) ‘Domicile’ shall have the same meaning defined in Article 38 Civil Code of Louisiana; provided, that for purposes of this article, an officer or employee who resides in several places and who is required to have or maintain or establish a ‘domicile’ in Orleans Parish shall have, maintain, or establish his or her ‘actual’ domicile in. Orleans Parish; and his or her ‘actual domicile’ shall be determined on the basis of actual facts and not on the basis of his or her mere declaration of domicile.
C) ‘Actual domicile’ shall mean a person’s principal domestic establishment, the determination of which is based upon such actual facts as where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and the comforts of home, as contrasted with a business establishment or a residence that is not a principal home. For the purpose of this Article, one may have only one actual domicile, and that actual domicile shall be deemed to be the residence which meets the following criteria more than any other residence:
a) he or she usually sleeps there;
b) he or she keeps most clothing, toiletries, household appliances, and similar personal property of daily utility there;
c) he or she is registered to vote there;
d) he or she or a spouse with whom he or she lives has a telephone there in his or her name which is not usually on call-forward to another residence;
e) he or she directly receives and opens most non-city mail addressed to him or her there;
f) he or she is free to enter the premises without notice to or permission from others.
However, for the purposes of this article, voters registered in another parish or county are presumed not to have their actual domicile in Orleans Parish.”
We find no problem where, for purposes of a particular ordinance, domicile is specifically defined in a fashion different than the general law. However where the ordinance states that domicile “shall have the same meaning defined in Article 38 of the Civil Code of Louisiana” and then adds additional criteria in conflict with that article, we find that it is a prohibited infringement on the general law.
Article 38 of the Civil Code provides:
“The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternatively in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the person whose interests are thereby affected.” (emphasis added)
The Civil Code, in subsequent articles, provides the legal mechanisms for changing one’s domicile, and for proof of intent by written declaration. La.C.C. Arts. 41 and 42. *387 Ordinance 15,298 legislates these articles into oblivion since it precludes the use of a declaration of domicile. Because the ordinance utilizes Article 38 for definitional purposes, it cannot legislatively change the general law of domicile established by that Article.

EQUAL PROTECTION AND DUE PROCESS:

We also find that the “Grandfather Clause”, which denies promotional opportunities to those employees who maintained residences or domiciles outside Orleans Parish between August 27, 1973 and December 10, 1990, violates the due process and equal protection articles of Louisiana’ constitution.
Article 1, Section 2 of Louisiana’s Constitution provides that “[n]o person shall be deprived of life, liberty, or property, except by due process of law.” A law violates substantive due process when it does not bear a real and substantial relationship to an appropriate governmental objective. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985); Everett v. Goldman, 359 So.2d 1256 (La.1978). The essence of substantive due process is protection from arbitrary and unreasonable action. Babi-neaux v. Judiciary Commission, 341 So.2d 396 (La.1976).
Article 1, Section 3 of the Louisiana Constitution provides:
“No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.”
In Sibley v. Board of Supervisors of Louisiana State University, supra., our Supreme Court provided a succinct analysis of Louisiana’s equal protection clause:
“Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.” (emphasis added) Id. at 1107-1108.
The preamble to Municipal Ordinance 15,-298 states the City’s objective in enacting the ordinance:
“WHEREAS, the Council finds that the morale and efficiency of the City Civil Service will be enhanced by increasing the number of City officers and employees that have an ‘actual domicile’ in the City and who therefore have a stronger and more direct interest and a greater stake in the City’s general welfare and in the quality of life enjoyed by those who have their principal home in the City; and
WHEREAS, the Council finds that the strength of the City’s economy will be enhanced and the pact of economic development in the City increased if steps are taken to maximize the portion of the City’s personnel expenditures that is re-spect by employees of the City within the City; and
WHEREAS, the Council finds that there is a need to protect the City’s tax base by encouraging the utilization, maintenance, improvement and redevelopment or residential properties in the City; and
WHEREAS, the Council finds that there is a need to foster and promote the establishment of actual domiciles in New Orleans by as many employed persons as possible; and
WHEREAS, the City intends to require all City employees to establish and maintain actual domiciles in Orleans Parish, *388 and to require those now lawfully having an actual domicile elsewhere to establish Orleans Parish actual domiciles, when and if they choose to change their homes and actual domiciles, while avoiding hardship to its employees by permitting them to retain their currently lawful homes and actual domiciles;.... ” (emphasis added)
At trial, the City’s objectives were further enunciated by the testimony of Chief Administrative Officer, Leonard Simmons, to wit:
“Q. Do you have any statistical data that you can base the relationship between your objectives of economic development and tax base to this domicile ordinance?
A. Not any specific statistics, sir, just the idea that if more city employees that work here, live here, this will certainly increase our economic development.
* * * * * *
Q. Okay, well, what’s the reason that you wanted to no longer have the residence requirement applicable, to have domicile applicable?
A. I felt as CAO that if you work for the City, you ought to five in the city, it’s not a concept that is alien to most cities, to most parishes....
⅜ # ⅜ * * *
Q. With that in mind what statistical base did you use, other than your gut reaction, that would affect economic development or the tax base in the city?
A. I felt that even if just one person moved back in, that helps economic development.
* * ⅜ * * *
THE COURT:
What about the ’92 ordinance, does it have any grandfather clause?
THE WITNESS:
Yes, the two ordinances in ’92 both had grandfather clause, one introduced by the administration and one by the Council.
⅜ ⅜ ⅝ * ⅜ ⅜:
Q. Now, what’s left of what you call an economic tool is a prospective ordinance in terms of hires because everyone else before December, ’90 was grandfathered in, correct?
A. But it also requires those employees to have been authorized to live outside the parish, if they change their domicile, they have to move into Orleans Parish.
Q. I understand that.
A. So do I.
Q. That’s why I’m asking the question ... The number three aspect is all those people that were grandfathered in that continued to work for the City but they took advantage of what you now know to be the Werner doctrine, those people can never, ever be promoted?
A. Isn’t that what the case is all about?
# ⅜ * * ⅜ *
Q. ... Why are you placing economic development on their backs when it has nothing to do with their ability to deliver for you and has nothing to do with the efficiency of the classified service?
A. Well, first of all, I believe that if you work for the city, you should live in the city and even though you can be a good employee, and not live in the city, ... that you still do not have the vested interest of the government of the city because you don’t live here and that’s really the difference. If you pay taxes here and you are worried about your police protection and your fire protection for not only the city, but for your family, and the purchasing power that you would have within the city, that will improve economic development in the city ...
Q. But you have given up on all that. This same gentlemen, this same lady, can live in Jefferson Parish under the grandfather clause, you have given up that, that’s gone, the only thing left for the ten year employee is the inability, the prohibition against getting a promotion, so your economic development argument is gone.
A. No, you have to start sometime for the future generations, you’re right, most employees who have been there twenty years under the police and fire can retire if they so want under the City it is basically thirty years and fifty-five, so you have to start *389 sometime and again, just like any other laws, the second one for the grandfathering was a decision, the Council decided they wanted to go "with that, that was not my initial recommendation.... ”
The ordinance delineates a class of employees who are treated differently for promotional purposes. Those employees hired after August 27, 1973 (unless they received permission from the CAO) and before December 10, 1990 and who maintained domiciles outside of Orleans Parish are denied promotional opportunities unless they establish a domicile in Orleans.
The city’s objectives, as stated in the ordinance’s preamble and as testified to by Leonard Simmons, is to create a work force of city employees who are domiciliaries of the city in order to boost morale and efficiency of the city civil service, create a greater and stronger interest in the city’s welfare and economic development and to protect the city’s tax base. The defined class of employees in this case was permitted to maintain residencies (under the Werner decision) outside of Orleans Parish, are legally permitted to remain in the City’s employ by virtue of the “Grandfather Clause” even though domiciled[6] outside of Orleans Parish, but are denied promotion unless they move their domicile to Orleans Parish. We hold that the legislative denial of promotional opportunities to that particular defined class of employees does not further the City’s objectives. Permitting employees to reside outside of Orleans Parish while in the. City’s employ, and then enacting legislation which changes “residency” to a hybrid definition of “domicile” and then denying promotion unless they establish a domicile in Orleans Parish is discrimination without a furtherance of the City’s interest. We hold that it is a denial of both substantive due process and the equal protection of the law.
We find no merit to PANO’s argument that the ordinance discriminates against white city employees, nor do we find merit that it violates La.R.S. 40:2534. Further, because of the result we reach, we find no need to address the Fire-Fighters argument regarding impairment of its collective bargaining agreement, or the ex-post facto arguments of PANO.
For the reasons assigned, the judgment of the trial court is reversed and we enter the following decree.
IT IS ORDERED, ADJUDGED AND DECREED that Municipal Ordinance 15298 be and the same is hereby declared unconstitutional, and that accordingly, there be judgment in favor of the Police Association of New Orleans, Ronald J. Cannatella, Frank Pacarella and Michael Conn, Individually and on Behalf of all officers and employees of the City of New Orleans and the New Orleans Fire Fighters Association Local 632, AFL-CIO and its President, William J. Sanchez and against the defendant, the City of New Orleans, forever enjoining, restraining and prohibiting the defendant from enforcing the provisions of Ordinance 15298 as amended by ordinance 15420.
REVERSED AND RENDERED.

. Separate suits by PANO and Firefighters were consolidated at the trial level.

. New Orleans Fire fighters Association Local 632, et al. v. The City of New Orleans, No. 90-23634, Civil District Court for the Parish of Orleans.

. The Court did not address the other constitutional issues raised. Most of those issues are now before us in the instant matter.

. Section 2-705 of M.O. 15,298 provides:
“SECTION 2-705. GRANDFATHER CLAUSE
A) Any officer or employee who, on the 10th day of December 1990 maintained his or her actual domicile outside of Orleans Parish, shall be exempt from the prohibitions of Section 2-704(B), for so long as he or she maintains his or her actual domicile at the same address. No officer or employee exempted by this section shall be entitled to retain the benefits of the said exemption if he or she establishes a new actual domicile outside of Orleans Parish. If any officer or employee exempted by this section qualifies to be appointed to a new position or classification compensated at a higher rate of pay, the officer or employee shall establish an actual domicile in Orleans Parish prior to appointment to said position and the exemption granted by this section shall not thereafter apply to the said officer or employee.

.Section 2-705 of M.O. 15,420 which amended the "Grandfather Clause” of M.O. 15,298 provides:
"Section 2-705. Grandfather Clause
A) Any officer or employee who, on or before the 27th day of August, 1973, maintained his or her actual domicile outside of Orleans Parish in accordance with Ordinance Number 5240 M.C.S. and Policy memorandum 84, dated September 11, 1973, or who after the 27th day of August, 1973, received permission from the Chief Administrative- Office, and who has continuously maintained his or her domicile outside of Orleans Parish, within the same parish, and who is not in violation of Ordinance Number 5240 M.C.S., shall be exempt from the prohibitions of Section 2-704(A), for so long as he or she maintains his or her actual domicile at the same address he or she occupied on the 10th day of December, 1990.
Any officer or employee who, on the 10th day of December 1990 maintained his or her actual domicile outside of Orleans Parish, shall be exempt from the prohibitions of Section 2-704(B), for so long as he or she maintains his or her actual domicile at the same address. No officer or employee exempted by this section shall be entitled to retain the benefits of the said exemption if he or she establishes a *383 new actual domicile outside of Orleans Parish. If any officer or employee exempted by this section, other than those officers or employees who on or before the 27th day of August, 1973, maintained their actual domicile outside of Orleans Parish in accordance with Ordinance Number 5240 M.C.S. and Policy Memorandum 84, dated September 11, 1973, or who after the 27th day of August, 1973 received permission from the Chief Administrative Office, and who have continuously maintained their domicile outside of Orleans Parish, within the same parish, and who are not in violation of Ordinance Number 5240 M.C.S., qualifies to be appointed to a new position or classification compensated at a higher rate of pay, the officer or employee shall establish an actual domicile in Orleans Parish prior to appointment to said position and the exemption granted by this section shall not thereafter apply to the said officer or employee.”

. Residency of Ordinance 5240 became domicile in Ordinance 14268, then became “actual domicile” in ordinance 15298.