694 So.2d 892 (1997)
In re Judge Sylvia R. COOKS.
No. 96-O-1447.
Supreme Court of Louisiana.
May 20, 1997.
*894 Nancy C. Chachere, Steven Robert Scheckman, Hugh M. Collins, Ph.D., New Orleans, Timothy J. Palmatier, Metairie, Katherine Maris Mattes, New Orleans, for Applicant.
Sylvia Rita Cooks, Lafayette, John Michael Veron, Lake Charles, for Respondent.
VICTORY, Justice.
This is a disciplinary proceeding against Judge Sylvia R. Cooks, Court of Appeal, Louisiana Third Circuit. The Judiciary Commission of Louisiana (the "Commission") conducted a hearing and issued findings of fact and conclusions of law, finding that Judge Cooks violated Canons 1, 2 and 3 of the Code of Judicial Conduct (1976) and the provisions of La. Const. art. V, § 25(C), and recommended public censure. Thereafter, the Commission held another hearing to accept additional testimony on behalf of Judge Cooks. The Commission then issued its Supplemental Findings of Fact and Conclusions of Law and Recommendation, reiterating and adopting its original Findings of Fact and Conclusions of Law. After reviewing the record, we conclude that the charge against Judge Cooks is supported by clear and convincing evidence, and that public censure is warranted.

FACTS AND PROCEDURAL HISTORY
After an investigation, on December 19, 1994, the Judiciary Commission filed a Formal Charge against Judge Cooks.[1] The *895 Commission conducted a hearing and received a Stipulation of Facts (the "Stipulation") entered into between Judge Cooks, her attorney and Special Counsel for the Commission. The parties entered into this Stipulation to avoid a fully-contested evidentiary hearing.[2]
"Because this Court is not equipped to receive evidence, judicial disciplinary proceedings evidence is received at the Commission hearing, and factual determinations are made by this Court on the basis of the hearing record." In Re Judge Michael Johnson, 96-1866, p. 3 (La.11/25/96), 683 So.2d 1196 (cites omitted). In this case, as in Johnson, Judge Cooks has stipulated to all the facts necessary to determine whether she violated the Code of Judicial Conduct, thus our factual inquiry is at an end.
The Stipulation provides the factual basis for the Commission's conclusion that Judge Cooks violated the Code of Judicial Conduct and the Louisiana Constitution and we adopt the Stipulation as our factual findings. The Stipulation provides as follows:
The pleadings, depositions, sworn statements and admissions on file in this cause reveal the following material facts:
1. On November 16, 1992, Jane Abshire was an art teacher employed by the Lafayette Parish School Board. The School Board, on that day, permitted local law enforcement authorities to conduct a random search for drugs on the school grounds. The police arrested Jane Abshire for allegedly possessing narcotics paraphernalia. Jane Abshire's arrest ultimately spawned two related legal proceedings, namely:
a. Criminal charges alleging possession of cocaine while on school property in violation of R.S. 40:967 and 981.3 and possession with intent to use drug paraphernalia in violation of R.S. 40:1031, 1033 and 1035. State v. Abshire, No. 94 KK 0663 (15th JDC, August 6, 1993) (Motion to Suppress evidence denied), rev'd, No. K93-1098 (La.App. 3rd Cir., vacated and evidence suppressed), aff'd, No. 94 KK 0663, 637 So.2d 1066 (La. 1994). These charges against Jane Abshire have been dismissed. Sue Fontenot represented Jane Abshire throughout these proceedings.
b. Jane Abshire's administrative teacher tenure hearing wherein Ms. Abshire, through her counsel, Sue Fontenot, attempted among other legal strategies, to enjoin the administrative proceedings pending the outcome of the criminal charges against her. Abshire v. Lafayette Parish School Board, 15th Judicial District Court, No. 930093(G) (petition for injunctive relief filed January 7, 1993 and TRO granted; and, injunction denied on January 19, 1993); (on May 6, 1993 a second request for injunction denied), rev'd, 619 So.2d 103 (La.App. 3rd Cir., May 28, 1993) (Injunction granted with Judge Sylvia Cooks the organ for the Court), rev'd and remanded, 624 So.2d 1210 (La.1993) (Judgment of the Court of Appeal vacated and trial court judgment reinstated denying injunctive relief).
2. In Abshire v. Lafayette Parish School Board, Jane Abshire, through her counsel, Sue Fontenot filed an Application of Supervisory Writs with the Court of Appeal, Third Circuit on May 6, 1993 requesting a reversal of the district court's denial of injunctive relief.
3. A five judge panel was assigned to hear and decide the writ application in *896 Abshire. Judge Sylvia R. Cooks was member of the panel and wrote the opinion of the court, with Judge Stoker dissenting.[3]
a. Judge Jerome Domengeaux was an original member of the five judge panel but he recused himself.
4. Judge Sylvia R. Cooks maintained a personal, professional and attorney-client relationship, of longstanding, with Sue Fontenot. Historically, their relationship consisted of the following:
a. Sylvia R. Cooks and Sue Fontenot have been close friends for approximately eighteen (18) to twenty (20) years.
b. Sue Fontenot is the Godmother of Sylvia R. Cooks' eldest child, Irvin Celestine, Jr.
c. Sue Fontenot is a practicing attorney and a former judge of the 15th Judicial District Court, having assumed the bench on January 1, 1979 and resigned on March 20, 1987.
d. When Sue Fontenot served as a district court judge, Sylvia R. Cooks, served as an assistant district attorney responsible for prosecuting cases before the 15th Judicial District Court, including, but not limited to, cases in former Judge Fontenot's court.
e. Sylvia R. Cooks and Sue Fontenot, during the time each was an attorney, co-counseled on several cases together, as well as with other attorneys.
5. Sue Fontenot was retained by Judge Sylvia R. Cooks to represent her in her legal separation and divorce proceeding, Sylvia C. Celestine v. Irvin J. Celestine, Sr., 15th Judicial District Court, Case No. 900385(E), commencing on January 22, 1990 (Petition for Legal Separation) and April 21, 1993 (Divorce and Partition of Community Property Agreement); May 11, 1993 (letters to Judge Cooks and Irvin enclosing judgment of divorce); January 27, 1994 (letter to Judge Cooks re: draft of a Stipulation and Judgment concerning child support); and, February 1, 1994 (letter from Sue Fontenot to Irvin Celestine enclosing draft of Stipulation re: child support).
6. Sue Fontenot represented Sylvia R. Cooks (during her domestic litigation) and Jane Abshire, during the pendency of Jane Abshire's proceedings before the Lafayette Parish School Board.[4]
7. For about one (1) year beginning in 1989 to 1990 Sylvia R. Cooks, while a practicing attorney, shared office space with Linda Abshire, the sister of Jane Abshire.
a. Sylvia R. Cooks first became acquainted with Jane Abshire when she was practicing law in the same office with Jane's sister, Linda Abshire.
8. Shortly after Jane Abshire's arrest, on November 16, 1992, Ms. Abshire was admitted to a drug rehabilitation facility, the Tau Center, in Baton Rouge, Louisiana. On November 28, 1992 Judge Sylvia R. Cooks and Sue Fontenot went to Baton Rouge together for two purposes, namely: A. to observe Sue Fontenot's son play football in the LSU-Tulane game; and, B. for *897 Judge Cooks to visit her mother in Our Lady of the Lake Hospital.[5] While en route to Baton Rouge Sue Fontenot decided to visit Jane Abshire in the Tau Center for the first time after being retained as her attorney. After Judge Cooks visited with her mother, she then briefly visited with Jane Abshire in the Tau Center (which was across the street from Our Lady of the Lake hospital) while Sue Fontenot was present. During this visit Jane Abshire proclaimed to Judge Cooks that she was "innocent" and "didn't have any drugs." Thereafter, Judge Cooks and Sue Fontenot attended the LSU-Tulane football game together.
9. Between November 16, 1992, the date Jane Abshire was arrested, and May 28, 1993, the date Judge Cooks and the Third Circuit rendered an opinion in the Abshire case, Judge Cooks and Jane Abshire saw each other on occasions, together with other individuals.
10. In January of 1993, Jane Abshire tutored one of Judge Cooks children, Krystal, after school two to three times per week. Ms. Abshire also occasionally stayed with Krystal in the evenings until Judge Cooks or another adult family member returned home, at which time Jane Abshire would leave. Sylvia R. Cooks paid Jane Abshire $128.00 on January 8, 1993, $127.00 on January 19, 1993 and $75.00 on January 28, 1993 for a total of $330.00, plus an additional $25.00, on March 12, 1993, to reimburse Ms. Abshire for school supplies. The payments by Judge Cooks to Jane Abshire constituted reimbursement for groceries, plus Judge Cooks would pay her additional $40.00 on each occasion, which included what Judge Cooks considered the payment for gasoline expenses.
11. On May 20, 1993, while Ms. Abshire's writ application was pending before the Third Circuit, Court of Appeal and Judge Sylvia R. Cooks, Jane Abshire, of her own volition, went to Natalee Decorative Accessories and selected a "Marble Sphere" and "Brass Griffin Stand," subject to Judge Cooks' approval, which was placed as a decorative piece in Judge Cooks' new judicial offices. After the decision rendered by the Third Circuit and Judge Cooks, on May 28, 1993, Jane Abshire voluntarily assisted, of her own volition, Judge Sylvia R. Cooks with the redecorating of her judicial offices, including contacting suppliers, securing samples and offering decorating advice. Ms. Abshire was not paid by Judge Sylvia R. Cooks for this assistance.
12. Between January 1, 1993 through May 28, 1993 Sue Fontenot and Judge Sylvia Cooks spoke on the telephone nearly everyday.
a. Sue Fontenot's telephone records indicate that she placed telephone calls to Judge Sylvia R. Cooks in excess of 100 occasions between January 1, 1993 through May 28, 1993, including approximately 29 telephone calls to the home of Sylvia R. Cooks, 85 telephone calls to Judge Sylvia R. Cooks' office.
b. During some of the conversations between Sue Fontenot and Judge Cooks, Sue Fontenot acknowledges that she talked about events as reported in newspaper accounts of the Abshire case. Judge Cooks has no specific recollection of these conversations, but does not dispute Sue Fontenot's statement.
c. Judge Sylvia R. Cooks resides in Lafayette, Louisiana and her telephone records do not include telephone calls from her home or office within a 40 mile radius, including to Abbeville, Louisiana, the location of Sue Fontenot's home and office. Judge Cooks' telephone records do indicate, however, that she placed three (3) long distance telephone calls, using a calling card, to Sue Fontenot in May of 1993, including a 74 minute call on May 22, 1993, while the Abshire writ application was pending before the Third Circuit and Judge Cooks.
d. There is no independent evidence in order to determine the content of telephone conversations between Judge *898 Cooks and Sue Fontenot.[6]
13. Jane Abshire resides in Lafayette, Louisiana and her telephone records do not include local telephone calls from her home telephone which may have been placed to Judge Cooks. Ms. Abshire's telephone records do indicate that she attempted to speak with Judge Cooks and placed long distance telephone calls, using a calling card, to Judge Sylvia R. Cooks' office and home, while Jane Abshire was hospitalized at the Tau Center, in Baton Rouge.
14. During the time the Abshire case was pending, Judge Cooks maintained a contingency fee interest in a personal injury case, with Jane Abshire's sister, Linda Abshire, an attorney. Traller v. Patterson Insurance Co., 15th JDC No. 89-2163(E), rev'd. sub. nom., Traller v. Leday, No. 92-829 (3rd Cir. 4/14/93)[617 So.2d 997].
a. Sylvia Cooks was the original counsel of record in Traller, on behalf of the plaintiff, when it was filed on April 20, 1989. Linda Abshire enrolled as co-counsel of record, for the plaintiff, on November 5, 1991, approximately eleven (11) months prior to Sylvia R. Cooks assuming office as a judge on the Third Circuit, Court of Appeal. The record reflects that Sylvia Cooks did no further work on the case after Linda Abshire enrolled as counsel.
b. After a trial on April 30, 1992 the trial court, in Traller, issued written reasons, on May 6, 1992 and a judgment, for the defendants, on May 11, 1992.
c. After the plaintiff, in Traller, through Linda Abshire, filed a Motion for Appeal on or about May 27, 1992, the 15th District Court forwarded to all counsel of record, including Sylvia Cooks, a "Notice of Appeal" on June 5, 1992.
d. The transcript, in Traller, was lodged with the Third Circuit on July 21, 1992 and the record reveals Sylvia Cooks was sent a notice of its filing.
e. The Third Circuit, in Traller, reversed the trial court, on April 14, 1993three weeks prior to Jane Abshire's writ application being lodged with the Third Circuit, on May 6, 1993 in Abshire v. Lafayette Parish School Boardand awarded the plaintiff damages in the amount of $156,028.61, subject to a reduction of 70% because of comparative fault, for a total award of $46,808.00 to the plaintiff. In a letter dated December 14, 1994, from Linda Abshire to Steven Scheckman, she stated, "I want to make it very clear that after the trial in May of 1992, I cannot recall ever having discussions about the status of this matter with the Judge."
f. On July 20, 1993 the plaintiff, in Traller, through Linda Abshire, received the insurance policy limits in the amount of $15,269.27 allowing for attorney fees of $5,089.76. On July 27, 1993 Judge Cooks received 40% of the Traller attorney fees, $1,900.00, constituting her share of the attorney's fee (which included reimbursement of costs).
g. The plaintiff, through Linda Abshire, is currently attempting to collect the balance of the judgment which exceeded the policy limits.
15. Subsequent to Judge Sylvia R. Cooks and the Third Circuit rendering the opinion in Abshire, on May 28, 1993:
a. Jane Abshire gave Judge Cooks a painting for her office during the summer of 1993. Judge Cooks strongly disliked the painting and never hung it on the walls of her office.
b. Judge Cooks, on June 25, 1993, while en route to New York City with her family, authorized the purchase of round-trip airline tickets to New York City, in the amount of $264.00, on her American Express Card, on Jane Abshire's behalf, with the understanding Ms. Abshire would pay her back. Jane Abshire and Judge Cooks each stated that Ms. Abshire repaid the advance for *899 the airline ticket in cash. There is no record of the repayment.
c. Judge Cooks traveled by automobile in late June of 1993, with members of her family, to New York City, for a conference. Jane Abshire traveled to New York City for the purpose of seeking employment at a museum. Jane Abshire met Judge Cooks in New York City using the airline ticket purchased on Judge Cooks' American Express card. Jane Abshire stayed with Judge Cooks and her family, a portion of the time, at a suite located on the campus of New York University. Jane Abshire also stayed with other friends in New York City.
d. The Lafayette Parish School Board, on or about June 28, 1993, submitted an application for supervisory writs with the Louisiana Supreme Court, serving same on opposing counsel on June 26, 1993. During Judge Cooks' trip to New York City, and while traveling to and visiting New York City, between June 28, 1993 through July 2, 1993 Judge Cooks placed 12 telephone calls to Sue Fontenot, including a 51 minute call on June 28, 1993, a 25 minute call on June 30, 1993 and a 20 minute call on July 2, 1993.
1. There is no independent evidence in order to determine the content of these telephone conversations between Judge Cooks and Sue Fontenot.[7]
16. Judge Sylvia R. Cooks advised the other panel judges, in Abshire, except Judge Stoker, that she "knew Jane Abshire and her family well." Judges Saunders and Knoll knew that Judge Cooks and Sue Fontenot were friends. Judges Stoker and Woodard did not know that Judge Cooks and Sue Fontenot were friends.
17. Judge Sylvia R. Cooks did not disclose the facts as outlined in ¶¶ 4(b) through (14) supra of this Statement of Stipulated Uncontested Facts, to either the Third Circuit, Court of Appeal judges, or to Lafayette Parish School Board, through its counsel, in Abshire v. Lafayette Parish School Board, 619 So.2d 103 (La.App. 3rd Cir., May 28, 1993).
18. Judge Sylvia R. Cooks did not recuse herself from Abshire v. Lafayette Parish School Board, 619 So.2d 103 (La.App. 3rd Cir., May 28, 1993).
19. Special Counsel reserves the right to present and introduce into evidence, at any hearing the Judiciary Commission may order concerning the sanction or discipline to be imposed upon Judge Cooks in this case, the receipts, bills and vouchers in the possession and control of the Judiciary Commission, representing the costs incurred by the Judiciary Commission in the investigation and prosecution of the case concerning Judge Sylvia R. Cooks. Judge Cooks does not stipulate to being assessed the costs of this proceeding and reserves her right to contest such an assessment before the Judiciary Commission and/or Supreme Court.
After the Commission issued its Findings, Conclusions and Recommendation, this Court, upon motion by Judge Cooks, ordered that the Commission hear the testimony of Sue Fontenot. At this hearing, Sue Fontenot sought to establish that there was no attorney-client relationship between Fontenot and Judge Cooks at the time the Abshire writ application was pending before the Third Circuit. Sue Fontenot testified that her representation of Judge Cooks in the divorce proceeding ended on April 21, 1993 when the Judgment of Divorce was rendered and a Community Property Settlement was signed. She acknowledged that the Judgment of Divorce stated that Judge Cooks' "right to reasonable child support is recognized reserving unto her said right to have the amount fixed at a later date." Thereafter, in January and February of 1994, Fontenot corresponded with Judge Cooks and her ex-husband regarding the amount of child support and Fontenot prepared a Stipulation and proposed Judgment on behalf of Judge Cooks which was signed by the parties. Fontenot never withdrew from her representation *900 of Judge Cooks after the April, 1993 Judgment of Divorce.
Based on the above facts, the Commission found five violations of the Judicial Code and the Louisiana Constitution by Judge Cooks.

DISCUSSION

Failure to disclose attorney-client relationship
First, the Commission found that Sue Fontenot simultaneously represented Judge Cooks in her divorce proceeding, which representation continued through February 1, 1994, and Jane Abshire in the matter of Abshire v. Lafayette Parish School Board, No. 930093(G) (15th Judicial District Court, May 6, 1993), rev'd, 619 So.2d 103 (La.App. 3rd Cir., May 28, 1993), rev'd and remanded, 624 So.2d 1210 (La.1993) (the "Abshire case"), while the matter was pending before the Third Circuit. The Commission found that "Judge Cooks had a separate, distinct and individual duty to disclose `at the time of hearing of any contested issue in the case, (that [s]he) has continued to employ, to represent (her) personally, the attorney actually handling the cause (not just a member of that attorney's firm).' Merritt v. Karcioglu, No. 95-1335, pp. 9-12 (La.App. 4th Cir. 1/19/96), 668 So.2d 469 (writ granted 4/25/96)." This duty to disclose arises out of La.Code Civ. Proc. art. 151 B which provides in pertinent part:
B. A judge of any court, trial or appellate, may be recused when he:
(2) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;
While the Commission noted that its duty was not to enforce violations of the Code of Civil Procedure, the Commission found that "a judge's willful violation of the spirit and letter of a procedural article on recusal constitutes violations of Canons 2 and 3A(1)[8] of the Code of Judicial Conduct." By failing to disclose her employment of Sue Fontenot to the parties in the Abshire case, the Commission found that Judge Cooks violated Canons 1[9], 2[10] and 3B(2)[11] of the Code of Judicial Conduct because she had the obligation to disclose all facts that might be grounds for disqualification.
Article 151 B(2) mandates that if a judge has continued to employ to represent him personally an attorney who is also representing a party in a matter pending before that judge, the judge must disclose this representation *901 to all the parties in the matter pending before him. This mandatory obligation exists so that all parties will have the information necessary to determine if they should request that the judge be recused. Clearly, failure to make this disclosure when an attorney-client relationship exists could subject a judge to discipline.
However, Judge Cooks disputes that Sue Fontenot continued to represent her after April 21, 1993 when the Judgment of Divorce was rendered and a Community Property Settlement was signed. The Abshire writ application was filed in the Third Circuit on May 6, 1993 and Judge Cooks' opinion was rendered on May 28, 1993. The Stipulation and testimony of Fontenot establish that Fontenot did no other work on Judge Cooks' divorce case after April 21, 1993 until approximately January of 1994, when she had discussions with Judge Cooks' ex-husband about the amount of his child support payments. In February of 1994, Fontenot prepared a Stipulation and proposed Judgment on behalf of Judge Cooks which was signed by the parties regarding child support. Judge Cooks maintains that the child support payment issue was a new representation by Fontenot, not a continuation of the representation in the divorce proceeding.
We find that Fontenot's representation of Judge Cooks continued while the Abshire writ application was pending. The case was not completed as the Judgment of Divorce left the issue of child support to be resolved at a later date and Fontenot had not withdrawn as Judge Cooks' attorney of record. While clearly the ethical course of conduct for Judge Cooks would have been to disclose the fact that Fontenot was representing Judge Cooks in her divorce proceeding, we find that this violation of the Canons would not alone subject Judge Cooks to discipline under the facts and circumstances of this case.

Ex-Parte Communications
The Commission also found that Judge Cooks violated Canon 3A(6), which provides in part that "a judge should not permit private or ex parte interviews, arguments or communications designed to influence his or her judicial action in any case." The first violation allegedly occurred when Judge Cooks visited Jane Abshire in the Tau Center in November of 1992 where Ms. Abshire assured Judge Cooks of her innocence. The second violation allegedly occurred when Judge Cooks discussed the newspaper accounts of the Abshire case with Sue Fontenot at the time in which the Abshire writ application was pending with the Third Circuit.
We find no violation of Canon 3A(6) by virtue of Judge Cooks' visit to Jane Abshire in November of 1992 because at that time, the Abshire case was not pending before Judge Cooks. However, as discussed below, this visit provides one of the bases on which Judge Cooks was obligated to recuse herself from the Abshire case.[12]
Judge Cooks' conversation with Sue Fontenot about newspaper accounts of the Abshire case at the time the case was pending before the Third Circuit is more problematic. While ex parte communications between attorneys and judges are not prohibited as long as they are not "designed to influence [the judge's] action in any case," this conversation must be viewed against the backdrop of the 100 telephone calls Fontenot placed to Judge Cooks between January 1, 1993 and May 28, 1993, including a 74 minute long distance call Judge Cooks made to Fontenot on May 22, 1993. However, other than discussing the newspaper articles, there is no evidence that Judge Cooks and Fontenot discussed the Abshire case in these telephone conversations. Accordingly, we *902 have no basis to determine if these conversations were designed to influence Judge Cooks' opinion in the Abshire case. While we certainly do not condone such extensive communication between a judge and an attorney in a case before her, the mere number of telephone calls, many of which occurred prior to the time the Abshire case was pending before the Third Circuit, along with the isolated discussion regarding the newspaper accounts of the Abshire case, do not constitute proof of a violation by clear and convincing evidence.

Failure to recuse
The last two violations found by the Commission involve Judge Cooks' decision not to recuse herself from the Abshire case based on her close personal relationships (1) with Sue Fontenot and (2) with Jane Abshire and her family. The Commission found that Judge Cooks violated Canon 2B by failing to recuse herself under C.C.P. art. 151 B(5).
Pretermitting Judge Cooks' relationship with Sue Fontenot, the record establishes the following evidence of Judge Cooks' close personal relationship with Jane Abshire: her visit with Jane Abshire at the Tau Center where Ms. Abshire professed her innocence; the phone calls from Ms. Abshire to Judge Cooks from the Tau Center; the babysitting and tutoring services Ms. Abshire performed for Judge Cooks in the months prior to the Abshire case pending before the Third Circuit; the decorating services Ms. Abshire performed in relation to Judge Cooks' office while the Abshire case was pending; and, Judge Cooks' purchase of a plane ticket for a trip to New York for Ms. Abshire in which Ms. Abshire stayed with Judge Cooks and her family, all in the two months after the Third Circuit's decision in Abshire.
As stated in Stipulation 16, Judge Cooks advised some other panel members in the Abshire case that she "knew Jane Abshire and her family well." She argues that none of the panel members advised her to recuse herself. However, in the absence of a motion to recuse, it is Judge Cooks's responsibility, knowing the full extent of her relationship with Jane Abshire, who must address the recusal issue.
We have, in another case on rehearing, addressed whether sanctions are appropriate where a judge fails to recuse him or herself according to the Judicial Code before the 1996 amendments[13], where no motion to recuse has been filed and where the grounds for recusal is stated to be "permissive" rather than "mandatory" under C.C.P 151 B. In Re Lemoine, 96-2116 (La.4/4/97), 692 So.2d 358 (per curiam), on rehearing. At the time of the Lemoine case and the case at bar, the Code of Judicial Conduct provided only that "recusation is governed by law." Code of Judicial Conduct, Canon 3(C) (1976). Judge Lemoine failed to recuse himself in 11 civil cases where he was associated with an attorney in those cases. As in this case, Article 151 B of the Code of Civil Procedure provided that a judge "may" recuse himself under such circumstances. In Lemoine, because we sanctioned Judge Lemoine for failing to recuse himself in 21 criminal cases where recusal was mandatory, we did not decide whether his failure to recuse himself in the civil case amounted to punishable misconduct, but we concluded the following:
Our conclusion, therefore, is that a judge's failure to recuse himself in a civil case may, under certain circumstances, but need not in all instances, constitute the type of punishable misconduct envisioned by the constitutional prohibitions outlined above. And further, by violating the Constitution, such a serious failure to recuse may constitute a breach of Canon 2, which states that judges should "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," and perhaps Canon 1 as well, with its more general exhortation to *903 preserve the integrity of the judiciary through high standards of conduct.
In re Lemoine, 96-O-2116, p. 4 (4/4/97), 692 So.2d 358 (per curiam), on rehearing.
In this case, the applicable law on recusal is Article 151 B(5) which directs that a judge may be recused when he "[i]s biased, prejudiced, or personally interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings." La. C.C.P. art. 151 B(5). Although the ground for recusal here is, interpreted literally, "permissive," the tantamount duty of a judge is to conduct fair and impartial proceedings. If he cannot conduct a fair and impartial proceeding because of bias or prejudice, he cannot hear the case. To hold that he has discretion to hear a case under C.C.P. art. 151 B(5) despite such bias or prejudice would defy common sense and logic.[14]
Judge Cooks' failure to recuse herself in the Abshire case constitutes the type of punishable misconduct envisioned by the Code of Judicial Conduct and the Louisiana Constitution. We hold that, absent direct evidence that the judge is biased or prejudiced to such an extent that he would be unable to conduct fair and impartial proceedings, where the circumstantial evidence of bias or prejudice is so overwhelming that no reasonable judge would hear the case,[15] failure of a judge to recuse herself is a violation of the Code of Judicial Conduct as well as the Louisiana Constitution. We find that the evidence and appearance of bias and prejudice here are so overwhelming due to the close personal and repeated contacts between Judge Cooks and Jane Abshire that any reasonable judge, faced with such circumstances, would have recused herself from the case.
Accordingly, by failing to recuse herself in the Abshire case in spite of her close personal relationship with Jane Abshire, Judge Cooks clearly violated Canon 1, directing that "a judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary be preserved," and Canon 2, directing that a judge "should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Furthermore, Judge Cooks' conduct constitutes "willful misconduct relating to [her] official duty" under Art. V, § 25(C) of the Louisiana Constitution.

DISCIPLINE
The grounds for disciplinary action against a judge are set forth in Louisiana Const. art. V, § 25(C), which provides, in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
In addition to these constitutional grounds, this Court, under its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, effective January 1, 1976. *904 This Code is binding on all judges, and violations of the Canons set forth therein may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). In re Decuir, 95-O-0056 (La. 5/22/95), 654 So.2d 687, 692; In re Wilkes, 403 So.2d 35, 40 (La.1981); In re Babineaux, 346 So.2d 676, 680-681 (La.1977), cert. denied, Berry v. Judiciary Commission of La., 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977). We have found that Judge Cooks violated Canons 1 and 2, and Article V, § 25 of the Louisiana Constitution.
In In re Chaisson, we adopted the following non-exclusive list of factors to consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;
(b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In re Chaisson, supra at p. 266 (citing In Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987)). Applying these factors, we find that public censure, as recommended by the Judiciary Commission, is appropriate in this case.[16]

DECREE
Accordingly, for the reasons stated above, it is ordered that Judge Sylvia R. Cooks, Court of Appeal, Third Circuit, be, and she hereby is, censured for violating the Code of Judicial Conduct and the Louisiana Constitution. It is further ordered that Judge Sylvia R. Cooks reimburse the Louisiana Judiciary Commission $8,428.42, representing costs incurred during the investigation and prosecution of the case. Supreme Court Rule 23, Section 22.
KNOLL, J., not on panel; recused. Rule IV, Part 2, § 3.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissents and will assign reasons.
CALOGERO, Chief Justice, dissenting.
The majority concludes that Judge Cooks' failure to recuse herself in the Abshire case violated both the Code of Judicial Conduct and the Constitution, as a consequence of which she warrants public censure. For the reasons that follow, I do not join the majority in this action.
The factual scenario, as I understand it, that gave rise to the Judiciary Commission's recommendation is as follows: In October 1992, Sylvia Cooks, a talented young lawyer with no prior judicial experience, was elected to the Court of Appeal, Third Circuit. Just seven months after taking office, never before having been a judge, she is confronted with the situation that developed and gave rise to the disciplinary proceedings involved here. At the time, Judge Cooks' experience with recusation is, of course, very limited, and she occasionally seeks guidance from her new peers on the Court of Appeal. The Canons of the Code of Judicial Conduct at the time simply tell her that "[t]he recusation of judges is governed by law."[1] That law *905 consists of Article 151 of the Code of Civil Procedure and Article 671 of the Code of Criminal Procedure, which set forth the law regarding recusal in civil and criminal cases, respectively. Article 671 of the C.Cr.P. tells her that in criminal cases she "shall" be recused in any one of six enumerated situations. Article 151 of the C.C.P. tells her that in civil cases like Abshire, she "shall" be recused if she is a witness in the case, but only "may" be recused in five other situations. The jurisprudence interpreting those articles tells her that the appearance of impropriety is not a ground for recusation in civil cases, because it is not enumerated as such in C.C.P. art. 151. E.g., State v. Pailet, 246 La. 483, 165 So.2d 294, 297 (1964) (holding that the statutory list of recusal grounds is exclusive, not illustrative, and there must be a statutory ground for recusing a judge); Christian v. Christian, 535 So.2d 842, 845 (La.App. 2d Cir.1988); Love v. Baden, 478 So.2d 1008, 1011 (La.App. 3d Cir.1985). Finally, no reported case has disciplined a judge for failing to recuse herself or himself in a civil case; rather, the reported recusal cases concern only the issue of whether a judge may sit on a case after he has been challenged by a litigant.[2] This was the state of the law as it existed when Judge Cooks came to the bench and when, within months, she authored an opinion and voted as one of five judges on the panel in the Abshire case.
The majority finds that Judge Cooks violated C.C.P. art. 151(B)(5) by not recusing herself in the case, one in which a friend was a litigant and in which her attorney and friend represented one of the parties. Article 151(B)(5) tells us that a judge "may" be recused if he is "biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings." The inherent problem with C.C.P. 151(B)(5) lies in proving bias and prejudice on the part of a judge, which is a subjective state of mind, without the benefit of objective evidence. The majority today puts forth an objective standard by which to measure bias or prejudice, holding that
absent direct evidence that the judge is biased or prejudiced to such an extent that he would be unable to conduct fair and impartial proceedings, where the circumstantial evidence of bias or prejudice is so overwhelming that no reasonable judge would hear the case, failure of a judge to recuse herself is a violation of the Code of Judicial Conduct as well as the Louisiana Constitution. Op. at 903 (emphasis supplied).
I do not disagree with the standard dictated by the majority: If no reasonable judge would desist from recusing herself in a given case under similar circumstances, then perhaps a judge in those same circumstances who does not recuse herself can be shown to have been biased and prejudiced by circumstantial evidence alone.
In the instant case, however, I cannot agree that "no reasonable judge" under these circumstances could possibly have stayed in the case. I am not convinced that it is impossible to be fair because of a social relationship with a litigant, and/or a professional relationship with an attorney. Before I would condemn an elected judge with a public censure where the evidence is entirely circumstantial, I would have to be convinced with absolutely clear evidence of the existence of that state of mind. See In re Daniels, 340 So.2d 301, 306 (1976). I would not find such evidence in this case.
NOTES
[1] Charge I, the only Charge which was not dismissed, reads as follows:

A. In the matter of, Abshire v. Lafayette Parish School Board, No. 930093(G) (15th JDC, May 6, 1993), rev'd, 619 So.2d 103 (La.App. 3rd Cir., May 28, 1993), re'v. and remanded, 624 So.2d 1210 (La.1993), the relator, Jane Abshire was represented by attorney Sue Fontenot. Judge Cooks was the author of the opinion in Abshire.
B. Judge Cooks, prior to and during the proceedings before the Lafayette Parish School Board, 15th Judicial District Court and Third Circuit, in Abshire, maintained a close personal and professional relationship, of long standing, and a simultaneous attorney-client relationship, with Sue Fontenot.
C. Judge Cooks and Sue Fontenot also engaged in many ex parte communications regarding the Abshire case.
D. Judge Cooks prior to, during and after the proceeding before the Third Circuit, in Abshire, maintained a close personal relationship with Jane Abshire and her family including, but not limited to: Judge Cooks visited Jane in a drug rehabilitation hospital and they also spoke on the telephone while Ms. Abshire was hospitalized; commencing in January 1993, and through the summer of 1993 Sylvia R. Cooks employed Jane Abshire to tutor one of her children, after school and Ms. Abshire also occasionally served as a baby sitter for Judge Cooks' children; in May of 1993, while Ms. Abshire's writ application was pending before the Third Circuit, Court of Appeal and Judge Sylvia R. Cooks (as well as immediately subsequent thereto) Jane Abshire assisted Judge Sylvia R. Cooks with the redecorating of her judicial offices, including contacting suppliers and furniture stores, securing samples and offering decorating advice; subsequent to Judge Sylvia Cooks and the Third Circuit rendering the opinion Abshire, on May 28, 1993, Jane Abshire gave Judge Cooks a painting for her office during the summer of 1993; and, on June 25, 1993 Judge Cooks purchased on her American Express Card, on Jane Abshire's behalf, round trip airline tickets to New York City in the amount of $264.00 and Jane Abshire stayed with Judge Cooks and her family in New York City at a suite located on the campus of New York University.
E. During the time the Abshire case was pending, Judge Cooks maintained a financial relationship with Jane Abshire's sister, Linda Abshire, an attorney.
F. Judge Sylvia R. Cooks failed to disclose her relationships with Sue Fontenot and Jane Abshire and/or the extent of her relationships with those individuals, to the parties and the other panel judges of the Court of Appeal, Third Circuit in the matter of, Abshire v. Lafayette School Board, No. 930093(G) (15th JDC, May 28, 1993), rev'd and remanded, 624 So.2d 1210 (La.1993), and was also biased and prejudiced to such a degree that, pursuant to LSA-C.C.P. Art. 151(B)(1), (2) and (5), Judge Sylvia Cooks was required to, and should have, recused herself from the Abshire case.
G. By reason of the foregoing Paragraphs A through F, you have:
1. Violated Canons 1, 2 and 3 of the Code of Judicial Conduct, adopted by the Supreme Court of Louisiana, effective January 1, 1976; and
2. Engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
[2] The Commission also held a hearing at which Judge Cooks presented character witnesses and an "expert" witness.
[3] Judge Sylvia Cooks contends that the opinion in the Abshire case did not render judgment on the merits, but instead remanded the case for hearing in the district court on the subject of a tenured teacher's constitutional rights prior to a board tenure hearing. Special Counsel disagrees with Judge Cooks' position. Special Counsel contends that the court's decision in Abshire, written by Judge Cooks, had a substantive effect, to wit: Ms. Abshire continued to receive her salary by order of the court and continued to do so until the Supreme Court reversed the opinion of the Third Circuit, in Abshire.

Subsequent to the resolution and dismissal of the criminal charges filed against Jane Abshire, a civil suit was filed by Jane Abshire against the Lafayette Parish School Board, Abshire v. Lafayette parish School Board, No. CA-93-1962-L/O, United States District Court for the Western District of Louisiana. A confidential financial settlement agreement was entered into by and between the parties.
[4] Based upon the facts as stated in Paragraphs 5 and 6, Judge Sylvia Cooks contends the attorney-client relationship between her and Sue Fontenot ended on the date the Judgment of Divorce was signed, April 21, 1993. Based upon the same facts, as stated in Paragraphs 5 and 6, Special Counsel contends that the attorney-client relationship between Judge Cooks and Sue Fontenot was continuing in nature, through and including May 11, 1993 while the Abshire case was pending before the Third Circuit, and further continued through February 1, 1994.
[5] Judge Cooks mother was hospitalized from approximately mid October, 1992 to January 31, 1993. Judge Cooks mother passed away on January 31, 1993.
[6] Judge Cooks contends the she and Sue Fontenot never discussed the merits of the Abshire case.
[7] Judge Cooks contends that she and Sue Fontenot never discussed the merits of the Abshire case.
[8] Canon 3A(1) provides "[a] judge should be faithful to the law and maintain professional competence in it. A judge should be unswayed by partisan interests, public clamor, or fear of criticism." Code of Judicial Conduct, Canon 3A(1) (1993). We do not find a specific violation of Canon 3A(1).
[9] Canon 1, entitled "A Judge Should Uphold the Integrity and Independence of the Judiciary", provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Code of Judicial Conduct, Canon 1.
[10] Canon 2, entitled "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities," provides as follows:

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of judicial office to advance the private interest of others; nor should a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.
Code of Judicial Conduct, Canon 2 (1976).
[11] Canon 3B(2) provides that "[a] judge should require staff and court officials subject to his or her direction and control to observe the standards of fidelity and diligence that apply to the judge." Code of Judicial Conduct, Canon 3B(2) (1993). We see no basis for the finding that 3B(2) was violated in this case.
[12] As stated by the Commission:

Prior personal knowledge from an extra-judicial source of evidentiary facts regarding a proceeding before her is grounds for disqualification. Prior personal knowledge of facts may cause a judge to predetermine a case or to evaluate facts on a one-sided basis. The plaintiff and defendant in a case should have an equal opportunity to convince the judge that their view of the facts is correct, and it is unfair for one of them to have the additional burden of trying to overcome a judge's previous personal impression of facts relative to the case. (quoting, Shaman, J., Judicial Conduct an Ethics, (2nd Ed.) § 4.102, p. 113).
[13] Canon 3(C) (effective 7/8/96) now provides:

C. Recusation. A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.
[14] The same can be said where the judge "is the spouse of a party, or of an attorney employed in the cause" under Article 151 B(4), another "permissive" recusal provision. Although the Article 151 B(4) says the judge "may" be recused in such a case, we can foresee no instances where a judge would not be required to recuse himself where he is the spouse of a party or an attorney employed in the cause.
[15] We have previously used an objective standard to determine whether a judge's actions gave the appearance of impropriety in In re Chaisson, 549 So.2d 259, 263 (La. 1989) ("The proper test of whether Judge Chaisson's actions gave the appearance of impropriety is an objective one: whether a reasonable person would be justified in suspecting that Judge Chaisson lend `the prestige of his office to advance the private interest' of Carmouche)." (citing In re Foster, 271 Md. 449, 318 A.2d 523, 533 (1974); Martineau, Disciplining Judges for Nonofficial Conduct: A Survey and Critique of the Law, 10 U. Balt. L.Rev. 225, 243 (1983)).
[16] The mitigating factors are as follows: other than this case, there is no evidence in the record that Judge Cooks has ever failed to recuse herself when she should havethis appears to be an isolated instance of misconduct; Judge Cooks has stipulated that the conduct occurred; Judge Cooks was only on the Third Circuit a couple of months when the conduct occurred; and, there have been no prior disciplinary sanctions against Judge Cooks. The aggravating factors are as follows: the misconduct occurred in her official capacity as judge, not in her private life; her misconduct in participating in the Abshire case has detrimentally impacted the integrity and respect for the judiciary; and, by failing to recuse herself, Judge Cooks created the appearance that she used her position to help obtain a favorable ruling for her friend Jane Abshire.
[1] Canon 3(C) has since been amended, effective July 8, 1996, to provide:

C. Recusation. A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.
[2] Since the time of the Abshire case, in fact after the instant case was lodged here, this Court issued a decision addressing a judge's misconduct in failing or neglecting to recuse himself. In In re Lemoine, 96-2116 (La.4/4/97), 692 So.2d 358 (on rehearing), this Court held that a judge's failure to recuse himself in 21 criminal cases and 11 civil cases, in which he was "associated with an attorney" in the respective causes under C.C.P. art. 151 and C.Cr.P. art. 671, subjected that judge to public censure under Article V, § 25(C) of the Louisiana Constitution.