Jeffrey M. **WALSON** (Judge, 25th Judicial Circuit of Kentucky), Appellant,

v.

The **ETHICS COMMITTEE OF the KENTUCKY JUDICIARY**, Appellee.

No. 2009–SC–000623–OA.

Supreme Court of Kentucky.

April 22, 2010.

## OPINION AND ORDER

### I. INTRODUCTION AND FACTUAL SUMMARY.

The Ethics Committee of the Kentucky Judiciary was asked to determine if the Kentucky Code of Judicial Conduct (Code), set forth at Rules of the Supreme Court (SCR) 4.300, prohibits a Kentucky justice or judge from serving as a member of the board of directors or on an advisory board of a financial institution. Revising some of its past opinions, the Committee issued Formal Judicial Ethics Opinion (JE) 118 stating that no justice or judge may serve as either an advisor or member of the board of directors of a financial institution, unless that justice or judge "has invested personal funds in a banking company. . . . "

This Court has reviewed JE–118 under SCR 4.310(4) at the request of Jeffrey Walson, a family court judge in the 25th Judicial Circuit of Kentucky. Judge Walson serves on the advisory board of a bank. We conclude that in JE–118, the Committee correctly determined that no member of the state judiciary may serve as an advisor or director for a financial institution. But we further conclude that the Committee erred in JE–118 by making an exception for members of the judiciary who have a personal financial stake in the financial institution they serve.[1]

### II. ANALYSIS.

This case presents two questions. First, may a justice or judge, serving at any level of the Kentucky Court of Justice, be a member of the board of directors or of an advisory board of a financial institution? We agree with JE–118 that the answer is no. Having reached that conclusion, we must then decide whether JE–118 correctly made an exception, which allows a justice or judge to serve on a board of a financial institution in which the justice or judge has a personal financial stake. We agree with Judge Walson that the exception is improper.

### A. The General Prohibition Applies to All Members of the Judiciary.

Canon 2 of the Code plainly says that a judicial officer "may properly lend the prestige of the judge's office to advance the public interest in the administration of justice[,]" but a judge "shall not lend the prestige of judicial office to advance the private interests of the judge or others. . . . " Closely related is Canon 4 D(3), which permits a judicial officer to serve as an officer, director, etc., of a business entity, unless that business entity, among other things, is "likely to be

---

1. Because the issue is not properly before us, we express no binding opinion at this time as to whether a judicial officer may serve as an advisor or director to a business entity other than a financial institution.

engaged in proceedings that would ordinarily come before the judge, or ... [is] likely to be engaged frequently in adversary proceedings in the court of which the judge is a member ...." Canon 4 D(3)(a)(ii)-(iii).

Banks and other financial institutions are frequent litigants at all levels of the courts of this Commonwealth. And the Canons make no distinction related to the court on which the judicial officer serves. So it would appear beyond dispute that district, circuit (including family court), and appellate judicial officers are all prohibited from serving as officers, directors, etc., for financial institutions.[2]

Of course, we do not believe that any of our conscientious judicial officers across the Commonwealth intentionally lends the prestige of office to the financial institutions on whose boards they serve. But we agree with the Committee's general conclusion that judicial officers are prohibited by the Canons from serving as directors or advisors of financial institutions because those judicial officers' service does unquestionably lend the prestige of the judicial offices to those financial institutions.

So we decline to disturb JE–118's conclusion that the Canons contain a general prohibition against judicial officers serving as advisors, directors, and the like on behalf of financial institutions. Judge Walson seems to accept the existence of that general prohibition; but he argues that family court judges—and, as we understand his point, only family court judges— should be exempt from that general prohibition. We disagree.

As Judge Walson notes in his motion for review, financial institutions themselves are not likely to be frequent litigators in family court. But we consider a special exception for family court judges improper for two reasons. First, although not themselves parties, financial institutions will frequently have some interest in the outcome of family court proceedings by virtue of being the repositories of the funds or the holders of debt of the family court litigants.[3] Second, and more importantly, adopting Judge Walson's position would require us to engage in an impermissible and arbitrary division of the offices of circuit judge and family court judge.

Section 109 of our Kentucky Constitution states, in relevant part, that "[t]he judicial power of the Commonwealth shall be vested exclusively in one Court of Justice which shall be divided into ... a trial court of general jurisdiction known as the Circuit Court...." And a circuit court division designated as a family court "shall retain the general jurisdiction of the Circuit Court and shall have additional juris-

---

2. Thus, the Committee properly withdrew its formal opinion in JE–78, which had held that district court judges were permitted to serve as directors of banks.

3. *See, e.g.,* Steven Lubet, *Regulation of Judges' Business and Financial Activities*, 37 EMORY L.J. 1, 28 (1988) ("It should be apparent, however, that certain institutions are more litigation sensitive' than others. **Banks, insurance companies, and utilities may often be affected by the outcome of litigation even where the particular entity is not a party to the particular proceeding.** ... Similarly, financial institutions may have an interest in lawsuits concerning general banking law, se-

curities, pension regulation, trusts, **and a host of other subjects.** Thus, a judge who sits on the board of directors of an insurance company will be faced with many more actual and potential conflicts of interest than will a judge who operates a hardware store. The conflicts are no less troubling because they are inchoate or general rather than being tied to specific litigation. The same holds true for virtually all of the heavily regulated industries, but banks, insurance companies, and utilities are among those that are the most closely involved with state government and state law.") (emphasis added and footnote omitted).

diction as may be provided by the General Assembly." Ky. Const. § 112(6). So, in simple terms, family court judges are circuit judges. And as we recently noted, "[c]onstitutionally speaking, Kentucky has but one circuit court and all circuit judges are members of that court and enjoy equal capacity to act throughout the state." *Baze v. Commonwealth*, 276 S.W.3d 761, 767 (Ky.2008). There is no constitutional basis, therefore, to treat family court judges differently from other circuit court judges. Judge Walson's argument asks us to divide the indivisible.

The constitutional provisions referenced in this opinion plainly lead to a conclusion that there is also no basis under the Code for us to adopt an arbitrary distinction between circuit judges exercising general jurisdiction and circuit judges exercising family court jurisdiction. Canon 4 D(3)(a)(iii) prohibits a judicial officer from serving as an officer, director, etc., for any business entity "likely to be engaged frequently in adversary proceedings in the court of which the judge is a member...." Family court judges are members of the circuit court, and it is indisputable that financial institutions are frequent litigants in circuit court. So the contention that family court judges—and only family court judges—may serve the interests of financial institutions is contrary to both Kentucky's Constitution and the Code of Judicial Conduct.

The Committee concluded that it was "unable to ascertain any purpose to an Advisory Board other than to lend the judge's name to enhance the prestige of the institution to enable it to draw more business." (Internal quotation marks omitted.) Judge Walson takes issue with this conclusion, arguing that it "stems from either a lack of understanding, consideration, or imagination." We agree that the Committee appears to have used unfortunately broad language in this section of its opinion. It is certainly possible that a judicial officer's education, training, or previous practice or employment experience could make the judicial officer well qualified to serve as an advisor or director for a financial institution. But Judge Walson has not cited to anything specific, apart from his own personal experience, to support his presumption that judicial officers are invariably chosen to serve financial institutions for reasons that have nothing to do with the high offices they hold. Although we do not embrace the broad language used by the Committee, we must reluctantly agree with its conclusion that, at least sometimes, judicial officers are placed on bank boards primarily because they are judicial officers who are popularly elected in the community from which the financial institution draws its customer base.

Although our focus must primarily be upon Kentucky law, we have also examined authority in other state judicial systems for guidance. Unfortunately, there are few reported decisions on this subject. But our conclusion that service as a judicial officer generally precludes simultaneous service as a director or similar officer of a financial institution is in accord with decisions from both the Oklahoma Judicial Ethics Advisory Panel[4] and the Supreme Court of Louisiana.[5]

---

4. *In re Judicial Ethics Opinion 2004–4*, 103 P.3d 84 (Okla.Jud.Eth.2004) (answering in the affirmative the question of whether "appointment to the Bench and assuming office necessitate or require the judge to resign as a Director of a Federal Credit Union[.]").

5. *Babineaux v. Judiciary Commission*, 341 So.2d 396, 403 (La.1976) (finding constitutional a canon of judicial ethics prohibiting judicial officers from serving on the board of directors of financial institutions).

Finally, we are compelled to note that adoption of Judge Walson's arguments would permit judicial officers to serve the interests of typically for-profit financial institutions while, by contrast, judicial officers are prohibited by JE–117 from serving as a member of the board of trustees of a public university.[6] It is unnecessary in this opinion to expound on the reasons underlying JE–117, and we intend no criticism of that decision. Instead, we merely point out that adoption of Judge Walson's arguments would lead to a seemingly incongruous juxtaposition between what a judicial officer (or at least a family court judge) could permissibly do on behalf of a presumably for-profit financial institution with what a judicial officer may not do on behalf of a non-profit public university. That juxtaposition seems illogical and arbitrary and, potentially, could undermine the public's confidence and trust in the judiciary.

### B. *No Exception for Having a Personal Financial Stake.*

■ Although we reject his conclusion regarding a special exception for family court judges, we do agree with Judge Walson's argument that the Committee erred in JE–118 by holding that a judicial officer is permitted to serve a financial institution merely because the judicial officer holds stock, or has a similar financial interest, in the financial institution being served. To the contrary, Canon 2 D explicitly forbids such a conclusion because it unquestionably prohibits judicial officers from "lend[ing] the prestige of judicial office to advance the private interests of the judge or others . . . ." Additionally, the Ethics

Committee's conclusion seems to run afoul of Canon 4 D(4), which requires a judicial officer to "manage the judge's investments and other financial interests to minimize the number of cases in which the judge is disqualified."

Obviously, any director or advisor to a financial institution must seek to further the interests of that financial institution. *Babineaux*, 341 So.2d at 400. ("The petitioners' contention that a directorship is a neutral position is untenable. It overlooks the fact that a director owes a fiduciary duty to the corporation. In practical terms, this means a duty to efficiently manage its affairs and promote its business."). We fail to see how merely owning at least one share of stock in a financial institution overrides the Code so as to function as a virtual free pass for a judicial officer to advance the private pecuniary interests of that financial institution. In other words, there is no distinction in the Canons between being an owner or no-nowner of stock in the financial institution; and the Committee erred by grafting such an unwarranted exception onto the Code.

### III. *CONCLUSION.*

We emphasize that we cast no aspersions on Judge Walson or any similarly situated judicial officer who is currently serving as a director or advisor for a financial institution. To the contrary, we trust that Judge Walson and all the judicial officers of this Commonwealth strive scrupulously to follow the requirements of the Code. But our construction of the Code and the Kentucky Constitution leads us to the inescapable conclusion that judicial of-

---

6. JE–117 was rendered in April 2009 and is available to the public at *http://courts.kv.gov/ NR/rdonlyres/50756AF1–2DA5–4B29–98C2– 24471F5C0A98/0/JE117.pdf.*
In May 2009, a majority of this Court declined to review JE–117 in case no. 2009–

SC–000242–OA, *In re Honorable Jeff S. Taylor.* The public may view the stepsheet, which summarily reflects our decision to decline review of JE–117 by entering the appropriate case information at *http://apps.courts.ky.gov/ supreme/sc_dockets.shtm.*

ficers, regardless of their benign intentions, are prohibited from accepting these types of positions with financial institutions. We agree with the Supreme Court of Louisiana that such a prohibition:

> serves to reduce the possibility that a judge would, or would seem to, use the prestige of his judicial office to attract business for the financial institution, to eliminate the potential conflict between a director's fiduciary duty to the corporation and his judicial duties, and to lessen the possibility of conflict of interest for the judge revolving around litigation before the court.

*In re Babineaux,* 346 So.2d 676, 679–80 (La.1977).

We agree with the Committee that no judicial officer, family court or otherwise, may serve as an advisor, director, or the like for financial institutions. We reject the Committee's conclusion that a judicial officer may serve as a director or advisor of a financial institution if the judicial officer has a financial stake in that financial institution.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur.

SCHRODER, J., dissents by separate opinion.

ENTERED: April 22, 2010.

/s/ John D. Minton, Jr.

## SCHRODER, J., DISSENTING.

Because I believe that the language of the Code of Judicial Conduct should be applied to the individual judge and the individual business at issue, I respectfully dissent. I take a broader view of the language of Canon 4 D(3), and read it to be permissive in nature.

This case involves the application of the Code of Judicial Conduct (SCR 4.300). The question asked was whether a Kentucky Judge or Justice, consistent with the Code of Judicial Conduct, could serve as a director on the board of directors or on the advisory board of a financial institution. Governing this situation is SCR 4.300, Canon 4, which states: "A judge shall so conduct the judge's extra-judicial activities as to minimize the risk of conflict with judicial obligations." Canon 4 D addresses "Financial Activities" and provides, in pertinent part:

(1) A judge shall not engage in financial and business dealings that:

(a) may reasonably be perceived to exploit the judge's judicial position, or

(b) involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves.

(2) A judge may, subject to the requirements of this Code, hold and manage investments of the judge and members of the judge's family, including real estate, and engage in other remunerative activity.

(3) A judge may serve as an officer, director, manager, general partner, advisor or employee of any business entity subject to the following limitations and the other requirements of this Code:

(a) A judge shall not be involved with any business entity

(i) generally held in disrepute in the community, or

(ii) likely to be engaged in proceedings that would ordinarily come before the judge, or

(iii) likely to be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdic-

tion of the court of which the judge is a member.

(b) A judge involved with any business entity may assist such a business entity in planning fund-raising and may participate in the management and investment of the entity's funds, but shall not personally participate in the solicitation of funds, the raising of capital or the selling of stock in such a manner as to use or permit the use of the prestige of judicial office for promotion of the business entity.

The question before us was previously presented to the Ethics Committee under the former code and answered in JE–67 and JE–78. In JE–67, the Ethics Committee was asked whether a judge may ethically "serve as a member of an advisory board of a local financial institution." The Ethics Committee recognized that "[t]he Kentucky Judicial Code of Ethics does not absolutely prohibit judges from serving on the boards of banks." The Ethics Committee acknowledged that Kentucky has taken a more lenient approach than the ABA Code of Judicial Conduct, and "has not chosen to strictly prohibit judges from being involved in certain businesses such as banks . . . ."

Nevertheless, the Committee decided that other provisions of the Code prohibited service on this advisory board. Canon 5 F (now Canon 4 G) prohibited judges from giving legal advice, and Canon 5 B(2) and Canon 5 C(1) (now Canon 2 D and Canon 4 D) forbade the judge from allowing the prestige of his or her office to be used to draw more business. The Committee was, therefore, "unable to determine any purpose the judge could serve on an advisory board other than lending his name to enhance the prestige of the institution to enable it to draw more business." Hence, the Committee advised that "a judge may not serve as a member of [an]

Advisory Board of a local financial institution."

A variation of the question came back to the Ethics Committee when they were asked, "May a district judge serve as director of a local bank?" Responding with JE–78, the Ethics Committee answered a "Qualified yes." Pointing out that the district judge must be careful not to lend the prestige of his office to advance the interest of the bank, the Ethics Committee advised that a district judge could serve as a bank director because a local bank is not often in district court. The Committee noted that in the event the bank was in district court, the judge would have to disqualify himself. Apparently, the fact that this was not merely an "advisory" board was distinguishing, and the bank had other reasons (other than using the prestige of his office) to want to have the judge on its board of directors.

JE–118 was issued by the Ethics Committee as a result of the Supreme Court's request that the Ethics Committee review all existing Judicial Ethics Opinions. The purpose of JE–118 was to address "a possible contradiction between" JE–67 and JE–78. Accordingly, the Ethics Committee stated the question as "May a Kentucky Judge or Justice, consistent with the Code of Judicial Conduct, serve as a director on the board of directors or on the advisory board of a financial institution?" The Ethics Committee answered a "Qualified No."

The Committee recognized that the express language of Canon 4 D(3) seemingly permits such participation in a business, but that the Commentary cautions that such service may be prohibited by other provisions of the Code. In this regard, the Committee looked to Canon 2 D, which provides that "[a] judge shall not lend the prestige of judicial office to advance the private interests of the judge or others," and to Canon 4 D(3)(iii) which provides

that a judge shall not be involved with any business entity "likely to be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member."

The Committee identified banks *per se* as a business to avoid because "banks are engaged in litigation much more frequently than other businesses." With regard to Canon 2 D, the Committee withdrew the distinction in circuit and district judges it made in JE–78. The Committee was unable to ascertain any purpose to any judge, irrespective of level of judicial service, serving on an advisory board or board of directors, other than to lend the judge's name to enhance the prestige of the institution to enable it to draw more business. The Committee decided to eliminate even the mere risk. Recognizing, however, "the right of a judge to have and maintain investments", the Committee carved out an exception that a judge may serve on the board of directors of a banking company in which the judge owns stock.

Movant is currently a circuit judge in the family court division, and he serves on the advisory board of a local bank. Standing is not an issue, nor is any actual conflict alleged between his office as judge and his position with the bank. Movant contends that JE–118 is far too narrow an interpretation of Canon 4 D of the Code of Judicial Conduct, and that such interpretation arbitrarily and unnecessarily restricts the non-judicial activities of judges and justices.

My interpretation of the language of Canon 4 D(3) is that it is permissive in nature and does not except out banks or other financial institutions. The clear

wording of Canon 4 D(3) provides: "A judge *may* serve as an officer, *director,* manager, general partner, *advisor* or employee of *any* business entity subject to the following limitations and the other requirements of this Code...." (Emphasis added.) The language is permissive,[7] with no distinctions related to the court in which the judge serves, in the type of business, the position held (director or an advisor), nor requirement that the judge own stock in said business to be either a director or advisor. Only after this permissive language does the Canon qualify this permissive language to exclude businesses that are:

(i) generally held in disrepute in the community, or

(ii) likely to be engaged in proceedings that would ordinarily come before the judge, or

(iii) likely to be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.

Canon 4 D(3)(a).

Here again, the exclusionary language of Canon 4 D(3) does not single out any business *per se,* nor distinguish between being a director or an advisor. There is no distinction between being an owner or nonowner of stock in the business. Further, when an individual is named without the title of "Judge," I would like to presume the purpose of having the judge serve on an advisory board or board of directors has something to do with his or her knowledge of the subject matter, although it could be shown otherwise and contrary to Canon 2 D. The language of

---

7. *See* SCR 4.300, Kentucky Code of Judicial Conduct, pmbl., which provides, in part, "[w]hen 'may' is used, it denotes permissible discretion or, depending on the context, it refers to action that is not covered by specific proscriptions."

the Canons must be applied to the individual business in the community and to the individual judge.

I agree with Movant that this particular business (a bank or financial institution) is not likely to come before this particular judge (a family court judge). Occasional conflicts, if any, can be dealt with through the judge's disqualification or recusal. To the extent that JE–118 opines otherwise, it conflicts with the clear wording of Canon 4 D. I would vacate JE–118 to that extent.